[Civ. No. 45933. Second Dist., Div. Five. June 18, 1975.]

JUAN T., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Rose, Klein & Marias and William A. Allen for Petitioner.

No appearance for Respondent.

Joseph P. Busch, District Attorney, John E. Howard, Acting District Attorney, Harry B. Sondheim, Donald J. Kaplan and Sterling S. Suga, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**KAUS, P. J.**—The juvenile court found that petitioner Juan T. was not a fit or proper subject for treatment under the Juvenile Court Law (Welf. & Inst. Code, § 707), and dismissed a petition filed in juvenile court charging him with three counts of robbery (Pen. Code, § 211), and one count of murder (Pen. Code, § 187), and directed that he be prosecuted as an adult.

In this mandate proceeding, we have concluded that because—as alleged by petitioner[1]—no reasons were stated by the juvenile court in declaring the minor to be unfit, we are unable to tell from this record whether it properly exercised its discretion. We therefore grant a

---

[1] "No reason was given by the Court in declaring minor to be unfit . . . ."

peremptory writ vacating the order of the juvenile court, to permit that court to reconsider its decision and, if it is still of the opinion that petitioner is unfit to be treated as a juvenile, to set forth the reasons for its conclusion.[2]

## FACTS

In February 1975 a petition was filed under section 602 of the Welfare and Institutions Code alleging that petitioner had committed murder and three robberies. A hearing was held to determine petitioner's fitness to be treated as a juvenile. The juvenile court had before it a copy of the police investigation and arrest report, the probation officer's report and recommendation, and a psychiatrist's report.

The police report stated that petitioner was one of five juveniles who had committed three robberies. One of the suspects—not petitioner—shot and killed a victim using a sawed-off .12 gauge shotgun. Several days before the incident, petitioner and another juvenile had tried to obtain shotgun shells from an acquaintance.

The probation officer's report listed 22 previous contacts with the authorities, resulting in various dispositions. In 1970, when petitioner was 11 years of age, he was declared a ward of the court based on a petition charging him with robbery; in 1974 he was placed on probation based on a petition charging him with theft. Of the other charges, some were "held in abeyance," some were dismissed at the adjudication hearing, on some no information was available as to the outcome, and some were "still going through court."

The probation officer recommended that petitioner be found a fit and proper subject to be dealt with under the juvenile court law. His report noted that petitioner had never been removed from his home as a result of his behavior, and had only been declared a ward of the court on two occasions. The probation officer testified at the fitness hearing that in preparing his recommendation he did not consider several items that he had held in abeyance. The report noted that the robbery was planned, and that the fact that a weapon was carried to the scene of the crime

---

[2]We do not hold that the totality of the evidence before the juvenile court does not support the finding of unfitness; we merely say that without an adequate statement of reasons we cannot follow "the analytic route the [juvenile court] traveled from evidence to action" (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles,* 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12]), or whether it "randomly leap[ed] from evidence to conclusions." (*Id.,* at p. 516.)

"would almost indicate that they prepared to do harm to another person." The report stated that the treatment program at the California Youth Authority would aid in petitioner's rehabilitation, and that the treatment programs at the California Youth Authority are about the same for juveniles and for adults, the difference being that juveniles spend less time in the program.

The psychiatric report stated that petitioner denied his guilt and showed "no signs of remorse or concern," was "functioning pretty much within a normal range," and showed "a lack of discipline."

The juvenile court, after listening to argument, stated: "In the matter of Juan —, the court finds, on the basis of the record before it, that the minor is not a fit or proper subject to be dealt with under the Juvenile Court law," and, to the district attorney: "You will file an accusatory pleading in the proper form today." Then: "The petition is dismissed."

## DISCUSSION

In *Kent* v. *United States* (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], the United States Supreme Court held, in ruling whether a juvenile court had properly waived jurisdiction (383 U.S. at p. 543 [16 L.Ed.2d at p. 87]), that such a waiver required a statement of reasons: "Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. . . . Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. . . . [I]t must set forth the basis for the order with sufficient specificity to permit meaningful review." (*Id.*, p. 561 [16 L.Ed.2d at p. 97].)

*Kent* was specifically relied on in *In re Sturm*, 11 Cal.3d 258 [113 Cal.Rptr. 361, 521 P.2d 97], a case involving procedural standards to be followed in Adult Authority hearings resulting in the denial of parole. In *Sturm*, the Supreme Court construed *Kent* as setting forth due process requirements necessary to a meaningful judicial review: unless the reasons for the Authority's decision are known, "there is little inherent guard against careless decisions," petitioners are unable to formulate a persuasive application for relief, and review on the record theretofore

made may become "impossible." (*Id.,* at p. 270.) "In light of *Kent,* the mere recognition of these considerations leads inexorably to the conclusion that due process requires that the Authority support its determinations with a statement of its reasons therefor." (*Id.,* at p. 270. Fn. omitted.)

■ It follows from *Sturm* that an order under Welfare and Institutions Code, section 707, equally requires a statement of reasons. (See also *Donald L.* v. *Superior Court,* 7 Cal.3d 592, 600 [102 Cal.Rptr. 850, 498 P.2d 1098].)

This court has previously discussed the need for a statement of reasons. In *People* v. *Browning,* 45 Cal.App.3d 125, 137, 138 [119 Cal.Rptr. 420], in rejecting the defendant's contention that formal findings of fact were required, we pointed out that "*Kent* specifically disclaims a requirement that the court should 'necessarily include conventional findings of fact.' *All Kent requires is that the basis for the order be set forth 'with sufficient specificity to permit meaningful review.'* " (Italics added.)

We hold no more in this case: it is essential that the juvenile court state its reasons that a minor is not a fit and proper subject for treatment under the juvenile court law.

This requirement is no make-work device. The standards for determining a minor's fitness for treatment as a juvenile are set forth in *Jimmy H.* v. *Superior Court,* 3 Cal.3d 709 [91 Cal.Rptr. 600, 478 P.2d 32]: "[T]he court must go beyond the circumstances surrounding the offense itself and the minor's possible denial of involvement in such offense. [Citations.] The court may consider a minor's past record of delinquency [citations] and *must* take into account his behavior pattern as described in the probation officer's report. [Citations.]" (*Id.,* at p. 714. Italics in original.)

"Other factors which may be considered by the juvenile court . . . are . . . the nature of the crime allegedly committed, the circumstances and details surrounding its commission, the minor's behavior pattern including his past record, if any, of delinquency, his degree of sophistication especially as the same may relate to criminal activities and contradictory opinion testimony. [Citations.]" (*Id.,* at pp. 715-716.)

"Testimony of expert witnesses may also provide guidance for the court's decision on the fitness of a minor for treatment as a juvenile. [Citation.] . . . [I]f the court otherwise decided that the Youth Authority program was best suited to the needs of the minor, it could hold him unfit if those experts testified that rehabilitation might require treatment beyond the date of his mandatory discharge. [Citations.] [¶] . . . If the possibility that the Youth Authority might have to treat a ward of the juvenile court beyond the age of his majority is the determinative factor in the court's decision that the minor is unfit, there must be substantial evidence in the record that successful treatment might require the extra time. [¶] [O]pinion evidence [that the minor would be a danger to society when the juvenile court lost jurisdiction] is not essential for the juvenile court to conclude that a minor is not fit." Expert testimony "weighs heavily . . . [but] it is not conclusive." (*Id.,* at pp. 714-715.)

When we apply the standards set forth in *Jimmy H.* to the record before us, the difficulty of determining whether the juvenile court properly exercised its discretion is manifest. Although petitioner had 22 previous contacts with the juvenile authorities, only two of these resulted in the minor being declared a ward of the court. We do not know which of the other contacts the trial court considered. That Juan T. had never even been removed from his home under the juvenile court law is doubtless relevant in determining whether the facilities of the juvenile court have been exhausted, but if the failure to confine him resulted from a lack of judgment on the part of the authorities, that factor would not be decisive. (See *People* v. *Browning, supra,* 45 Cal.App.3d 125, 138.)

The psychiatrist's report indicates an above average intelligence and a lack of remorse—factors that would not favor juvenile court treatment. On the other hand, the report indicates problems of "insecurity," which might point the other way. The probation officer's recommendation that petitioner be treated under the Juvenile Court Law was to be considered; however, that recommendation may have been undercut by the officer's own statement that since the minor had been on probation, he had "not abided by the conditions of probation."

In conclusion, on this record, and absent any statement of reasons, we cannot determine whether the trial court abused its discretion in finding the minor to be unfit for juvenile court treatment. A peremptory writ is granted, ordering the trial court to vacate its order of February 24, 1975,

and to reconsider the matter in accordance with the views expressed in this opinion.

Hastings, J., and Loring, J.,* concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied August 13, 1975.

---

*Assigned by the Chairman of the Judicial Council.