[Crim. No. 19364. Dec. 30, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD NEVELS EDWARDS, Defendant and Appellant.

**COUNSEL**

Elaine A. Alexander, under appointment by the Supreme Court, and Judith N. Keep, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth, A. Wells Petersen and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WRIGHT, C. J.**—Ronald Nevels Edwards appeals from a judgment following a jury conviction of possession of a firearm by an ex-felon. (Pen. Code, § 12021, subd. (a).) The principal issue with which we deal is that raised by defendant's contention that a sentencing judge must, in all instances, state his reasons for denying probation when the denial is contrary to a recommendation therefor. (See Pen. Code, § 1203, subd.

(a).)[1] ▅▅▅ Although we are of the view that a statement of the judge's reasons for denying recommended probation is a preferred practice, we reject defendant's contention that the rule which he urges is either constitutionally compelled or must be imposed by us in the exercise of our supervisory authority over state criminal procedure (see, e.g., *People v. Rhodes* (1974) 12 Cal.3d 180, 186-187 [115 Cal.Rptr. 235, 524 P.2d 363]; *People v. Cahan* (1955) 44 Cal.2d 434, 442 [282 P.2d 905, 50 A.L.R.2d 513]).

In July 1974, during the course of a social gathering, defendant and Randolph Smith discussed the subject of firearms. Smith left the party and returned later with a nine millimeter pistol and ammunition. Shortly thereafter Smith lent defendant the firearm and several cartridges.

Eight days later in response to a series of conflicting stories told to them by Smith,[2] police proceeded to defendant's residence and arrested him for grand theft of Smith's gun. Although defendant was never prosecuted for grand theft, he was charged four weeks after his initial arrest as an ex-felon in possession of a firearm. (§ 12021, subd. (a).)[3] The

---

[1]Penal Code section 1203, subdivision (a) as the same relates to sentencing reads in relevant part as follows: "In every case in which a person is convicted of a felony and is eligible for probation, before judgment is pronounced, the court shall immediately refer the matter to the probation officer to investigate and report to the court . . . . At the hearing, the court shall consider any report of the probation officer and shall make a statement that it has considered such report which shall be filed with the clerk of the court as a record in the case. *If the court determines that there are circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be subserved by granting probation to the person, it may place him on probation. . . .*" (Italics added.)

All statutory references hereinafter, unless specified otherwise, are to sections of the Penal Code.

[2]Prior to defendant's arrest Smith twice reported to police that his gun was "stolen" and that he suspected defendant as the thief. Smith later admitted the falsity of these accusations.

[3]Penal Code section 12021, subdivision (a) provided at the time of the charged offense: "Any person who is not a citizen of the United States and *any person who has been convicted of a felony* . . . or who is addicted to the use of any narcotic drug, who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, and shall be punishable by imprisonment in the state prison not exceeding 15 years, or in a county jail not exceeding one year or by a fine not exceeding five hundred dollars ($500), or by both." (Italics added.)

Since the statute provides no minimum punishment, the minimum term would ordinarily be fixed by the provisions of section 18b unless the provisions of section 3024 applied. Section 18b prescribes a minimum term of 6 months in all felony cases where the maximum term is 15 years or less. Section 3024 provides for increased minimum terms for persons armed with weapons or who had suffered previous or multiple convictions.

information alleged a prior conviction in 1971 for selling marijuana, a felony. (See former Health & Saf. Code, § 11531, now § 11360.)[4]

In March 1975 a jury found defendant guilty of a violation of section 12021 and the trial court refused to grant probation as recommended in a comprehensive and favorable presentencing report. Defendant urges in addition to his contention that the court's failure to state its reasons for denying probation offends concepts of procedural due process that the court's failure to grant probation constitutes an abuse of discretion.

Before proceeding to a discussion of the foregoing contentions we first consider an obvious error in sentencing defendant. The court purported to pronounce judgment in a manner which would have augmented defendant's sentence pursuant to section 3024, subdivision (c).[5] ■ The court's reliance on defendant's prior conviction for the dual purpose of augmenting sentence and providing an essential element of the charged offense, however, runs afoul of the established rule that when a prior conviction constitutes an element of criminal conduct which otherwise would be noncriminal, the minimum sentence may not be increased because of the indispensable prior conviction. (*People* v. *Floyd* (1969) 71 Cal.2d 879, 883 [80 Cal.Rptr. 22, 457 P.2d 862]; *People* v. *Ford* (1964) 60 Cal.2d 772, 794 [36 Cal.Rptr. 620, 388 P.2d 892]; *In re Shull* (1944) 23 Cal.2d 745, 749-752 [146 P.2d 417]; *People* v. *Perry* (1974) 42 Cal.App.3d 451, 460 [116 Cal.Rptr. 853].) Here, proof of defendant's marijuana conviction may be used *only* to establish an element of a violation of section 12021 and *not* to increase the term of the sentence under section 3024.

■ The statutory responsibility of sentencing courts to order preparation of probation reports and attest to having read and considered the contents of such reports carries with it the responsibility, albeit a discretionary one, to consider thoughtfully and seriously a grant of

[4]The record discloses reference by defense counsel and probation officers to a missed opportunity on defendant's part to expunge (§ 1203.4, subd. (a)) his prior marijuana conviction and thus prevent its use as an essential element for establishing "ex-felon" status in the present proceeding. However, the explicit language of section 1203.4, subdivision (a) exempts section 12021 charges from its prohibitory scope. (See *People* v. *Wiedersperg* (1975) 44 Cal.App.3d 550, 554 [118 Cal.Rptr. 755].)

[5]Section 3024 provides in relevant part: "The following shall be the minimum term of sentence and imprisonment in certain cases, notwithstanding any other provision of this code, or any provision of law specifying a lesser sentence:

". . . . . . . . . . . . . . . . . .

"(c) For a person previously convicted of a felony . . . two years."

probation if the judge determines that there exist "circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be subserved . . . ." (§ 1203, subd. (a).) Although the traditional view that a grant of probation is a privileged act of grace or clemency has been discredited in favor of the modern view that such a grant should be deemed an alternative form of punishment in those cases when it can be used as a correctional tool (see *People* v. *Vickers* (1972) 8 Cal.3d 451, 455-456 [105 Cal.Rptr. 305, 503 P.2d 1313]), the mechanics of granting or denying probation have not been prescribed by statutory or judicial guidelines[6] nor have they often been tested against procedural due process requirements.

The primary function served by the probation report required by section 1203 is to assist the court in determining an appropriate disposition after conviction.[7] The overall significance of probation reports finds vivid illustration from the high proportion of recommendations contained in such reports actually accepted by sentencing courts. (Carter & Wilkins, *Some Factors in Sentencing Policy* (1967) 58 J. Crim. L.C. & P.S. 503, 504-508.)[8]

---

[6]American Bar Association standards specify the following criteria for granting probation: "(a) The probation decision should not turn upon generalizations about types of offenses or the existence of a prior criminal record, but should be rooted in the facts and circumstances of each case. The court should consider the nature and circumstances of the crime, the history and character of the offender, and available institutional and community resources. Probation should be the sentence unless the sentencing court finds that: (i) confinement is necessary to protect the public from further criminal activity by the offender; or (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or (iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed.

"(b) Whether the defendant pleads guilty, pleads not guilty or intends to appeal is not relevant to the issue of whether probation is an appropriate sentence." (ABA Standards Relating to Probation (Approved Draft, 1970) p. 30; accord Wechsler, *Codification of Criminal Law in the United States: The Model Penal Code* (1968) 68 Colum.L.Rev. 1425, 1450-1456.)

[7]"The pre-sentence report and its influence on the sentencing process epitomize the fact that the humanitarian's plea—let the punishment fit the criminal and not merely the crime—has come to be an accepted postulate of correctional policy." (Comment, *Probation: A Comparative Study of Louisiana Law and the ABA Standards* (1973) 33 La.L.Rev. 579, 586; accord, *Dorszynski* v. *United States* (1974) 418 U.S. 424, 434. [41 L.Ed.2d 855, 863, 94 S.Ct. 3042]; Youth Corrections Act, 18 U.S.C. §§ 5014, 5015; Allen, *Criminal Justice, Legal Values and the Rehabilitative Ideal* (1959) 50 J. Crim. L.C. & P.S. 226.)

[8]A survey of superior courts in this state conducted during the early and middle 1960's reveals that sentencing judges accepted and followed between 95.6 and 97.3 percent of all probation report recommendations. Federal court judges displayed a similar deference; the mean acceptance rate for all 10 circuits in 1964 averaged 94.1 percent. (Carter & Wilkins, *Some Factors in Sentencing Policy, supra*, 58 J. Crim. L.C. & P.S. 503.)

Attentive to their duty of ensuring fair and impartial probation and sentencing hearings, courts of this state have condemned conditions of probation which have no relationship to the crime for which a defendant stands convicted, which relate to conduct not itself criminal and which require or forbid conduct not reasonably related to future criminality. (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) Courts have also refused to countenance, as unduly prejudicial, report data and observations devoid of supporting factual information sufficient to corroborate reliability. (*People* v. *Peterson* (1973) 9 Cal.3d 717, 726-728 [108 Cal.Rptr. 835, 511 P.2d 1187]; *People* v. *Calloway* (1974) 37 Cal.App.3d 905, 908-909 [112 Cal.Rptr. 745]; accord *United States* v. *Tucker* (1972) 404 U.S. 443, 446-447 [30 L.Ed.2d 592, 595-597, 92 S.Ct. 589].) We held in *Peterson* that a defendant is not afforded procedural due process protections in probation hearings when the procedures employed are "fundamentally unfair" to him. (*People* v. *Peterson, supra,* 9 Cal.3d 717, 726; see also *People* v. *Keefer* (1973) 35 Cal.App.3d 156, 169 [110 Cal.Rptr. 597].)

■ As is suggested by the foregoing decisions we are aware that a properly administered probation program not only serves society in effecting desirable rehabilitative goals (see Cal. Youth Authority, California's Probation Subsidy Program (A Progress Report to the Legislature, Report No. 2, Jan. 1975), pp. i-ii, 10-25; Report of the State Dept. of Justice, Crime and Delinquency in Cal. (1972) pp. 27-28, 32-33), but also insures that important rights are not denied to any person convicted of a crime. None of the foregoing or other authorities to which we are referred, however, suggest that a trial judge must explain his reasons for denying a grant of probation when his denial is contrary to the recommendation in the report.

Although we have required a statement of reasons for denial of an application for parole release (see *In re Sturm* (1974) 11 Cal.3d 258 [113 Cal.Rptr. 361, 521 P.2d 97]), the circumstances which made it fundamentally unfair to fail to state reasons for the denial in that context do not, for the reasons which next follow, pertain in the instant case. Adult Authority hearings which deal with parole matters are administrative in nature and afford far fewer procedural safeguards than in the case of judicial proceedings for the determination of punishment for criminal conduct after a finding of guilt. (*In re Tucker* (1971) 5 Cal.3d 171 [95 Cal.Rptr. 761, 486 P.2d 657].) Because of the very absence of such procedural safeguards, including the lack of counsel and a fully documented record, the opportunity for an inmate to challenge arbitrary

or capricious action by the Adult Authority may well be severely infringed. Without a statement of reasons for the denial of an application for parole, for instance, it is unlikely that an inmate can state a prima facie case necessary to gain even a review of claimed arbitrary action by the Adult Authority. (See *In re Sturm, supra,* 11 Cal.3d 258, 269; *In re Swain* (1949) 34 Cal.2d 300 [209 P.2d 793].)

A denial of probation, on the other hand, is a judicial act rendered with the full panoply of procedural protections. The court is provided with a report of the probation officer containing information of the defendant's background, his prior involvements, if any, with law enforcement agencies, his propensities and dispositions, his future plans if probation is granted, and the judge is required to verify that he has read and considered such report which often contains communications both favorable and unfavorable to defendant. The defendant is afforded an opportunity to present probation counselors with out-of-court character testimony and explanations of guilt, and he is afforded the benefit of counsel at all stages of the proceedings if he so desires, including the presence of an attorney at the probation and sentencing hearing. The judgment of the court is appealable and a complete record of proceedings is provided for appellate review. Unlike the situation following the denial of an application for parole there is thus an unconditional right of review which is not dependent upon reasons stated by the trial court for the denial of a grant of probation. We are unable to discern that merely by reason of an absence of such a statement an unfairness which offends procedural due process concepts results. Fundamental fairness to the defendant is otherwise assured in entertaining a direct appeal on a full judicial record.[9]

---

[9]We also distinguish the instant circumstances from those which prevail when a juvenile court determines at a "fitness" hearing that a juvenile is not amenable to the care, training and treatment within the facilities of the juvenile court, and certifies him for prosecution as an adult for any criminal offenses he allegedly may have committed. In so certifying a juvenile, the court is required for reasons of fundamental fairness to state its reasons therefor. (*Juan T.* v. *Superior Court* (1975) 49 Cal.App.3d 207 [122 Cal.Rptr. 405].) A juvenile, however, may challenge a finding of unfitness only by collateral attack (*People* v. *Chi Ko Wong* (1976) *ante*, p. 698 at p. 712 [135 Cal.Rptr. 392, 557 P.2d 976]) and, as in *Sturm*, bears the heavy burden of demonstrating a prima facie case even to gain a review of the order of certification. Because of the many complex reasons which may warrant the certification of a juvenile for criminal proceedings (see *Juan T.* v. *Superior Court, supra,* 49 Cal.App.3d 207, 211-212) and generally the unavailability of a full record as on a direct appeal, unless a juvenile court stated its reasons in the order of certification, no meaningful review of such an order would be possible. The certification of a juvenile for criminal proceedings is thus more comparable to a denial of an application for parole as in *Sturm*, and distinguishable from the instant circumstances.

Defendant argues, however, that notwithstanding the absence of a constitutional compulsion for the trial court to state reasons for a denial of a grant of probation when recommended, we should exercise our judicial rule making power over criminal proceedings (see *People* v. *Rhodes, supra,* 12 Cal.3d 180, 186-187; *People* v. *Vickers, supra,* 8 Cal.3d 451, 461-462; *People* v. *Cahan, supra,* 44 Cal.2d 434, 442) to mandate such a statement of reasons for denial of probation. We exercised such rule making authority in *In re Podesto* (1976) 15 Cal.3d 921 [127 Cal.Rptr. 97, 544 P.2d 1297], to hold that "trial courts *in the future* should render a brief statement of reasons in support of an order denying a motion for bail on appeal." (*Id.,* at p. 938.) We stressed in *Podesto* that a meaningful judicial review is often hampered without a statement of reasons for a particular decision, and noted desirable ends to be served by a requirement of articulated reasons in support of such decision.[10] There are, however, substantial distinctions between the circumstances pertaining in *Podesto* and those in the instant case.

The most significant of the purposes for a rule requiring a trial judge to state reasons for denying an application for relief in particular circumstances is the supposition that a statement of such reasons will afford either a basis or at least a more enlightened basis for appellate or other review of the order of denial. As we have already noted there is available on appeal from a judgment denying a grant of probation a full record of all proceedings including the probation and sentencing hearing itself; there is thus a solid basis for review of an order denying probation. Such a record generally will not be available, however, when a defendant seeks to challenge a trial court's denial of a motion for bail pending appeal. Such a challenge, to be meaningful, must generally be made well in advance of the preparation of a record. It may be accomplished by an application made to the appellate court (Cal. Rules of Court, rule 32(b)), and if that application is denied the defendant may seek a petition for the writ of habeas corpus. (See *In re Podesto, supra,* 15 Cal.3d 921, 927-928.) The question before the appellate court in either case, however, is whether the trial court abused its discretion in denying the

---

[10]"As these authorities suggest, a requirement of articulated reasons to support a given decision serves a number of interests. In the first place, as we have noted, the statement of such reasons will frequently be essential to any meaningful review of the decision. Secondly, a requirement of articulated reasons acts as an inherent guard against the careless decision, insuring that the judge himself analyzes the problem and recognizes the grounds for his decision. Finally, articulated reasons aid in preserving public confidence in the decision-making process 'by helping to persuade the parties [and the public] that . . . decision-making is careful, reasoned and equitable.' (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 517.)" (*In re Podesto, supra,* 15 Cal.3d 921, 937.)

initial application for bail pending appeal, and that determination is to be made on the record as presented to the trial court. (*Id.,* see fn. 4; see also Cal. Rules of Court, rule 32(b).)[11] Without a record as in the case of an appeal a meaningful review of the denial of the application for bail is not likely to be possible, and there are thus compelling reasons for a requirement that the trial judge state reasons for denial of the application in order to afford some basis for review. This is particularly true in view of the fact that rule 32(b) places on the defendant the burden of demonstrating that the trial court "unjustifiably denied the application" for bail.

In the instant circumstances because there is a full record available on review of the denial of an application for a grant of probation there does not exist the same compulsion for a rule similar to that in *Podesto.* We are also of the view that the second purpose of the rule announced in *Podesto* (see fn. 10, *ante*) is not equally applicable in the circumstances of the instant case. A trial judge who as here is aware that his judicial conduct is subject to review on a full record is not likely to make a hasty or careless decision. Thus an element of compulsion to exercise care and sound judgment is present without the requirement of an articulated statement of reasons for the denial of a grant of probation.

We thus conclude that there is no sufficient purpose to be served nor inequity to be avoided to justify the imposition of yet another rule of criminal trial procedure. We decline the invitation to do so. In our view the record on appeal affords to a reviewing court an adequate basis for determining the merits of a claim that an order denying a recommendation of a grant of probation constituted an abuse of judicial discretion to the defendant's prejudice, and we now proceed to make that determination in response to defendant's further contention to such effect.[12]

---

[11]Rule 32(b) provides that an application to a reviewing court for bail pending an appeal "shall include a showing that proper application for bail or a reduction of bail was made to the superior court and that such court *unjustifiably denied* the application." (Italics added.)

[12]Although we decline to impose on trial courts an express requirement that they state reasons for a denial of a recommendation of a grant of probation, we are nevertheless of the view that such is a preferred practice, and strongly recommend that it be followed in the future.

We note that the Legislature has enacted and the Governor has signed Senate Bill No. 42 (1975-1976 Reg. Sess.) which provides major changes in the administration of criminal justice to become effective July 1, 1977. The bill provides, inter alia, for new sentencing procedures (ch. 4.5, art. 1) which require that the sentencing judge, in most instances, select one of three possible sentences depending on findings of possible aggravating or mitigating circumstances, and provides in section 1170.1 that the trial

Although the probation officer recommended that probation be granted, the recommendation was marginal at best. In the "Analysis" section of the report it is stated: "[Defendant] does have a lengthy prior record, having previously been committed to the California Youth Authority and also placed on probation. Noteworthy are prior arrests for assaultive behavior and/or carrying weapons. . . . Considering Edwards' attitude towards this current offense, and his past lengthy record, it is questionable that any remarkable change is going to be made in his life style. If, however, by placing him on probation he can be deterred from any serious violations of the law, then this would appear to be an appropriate disposition as opposed to lengthy time in custody." When the judge characterized the recommendation as "very lenient," the probation officer readily agreed.[13]

The prior criminal record referred to in the report included, in addition to defendant's conviction for sale and transportation of marijuana, convictions for carrying a loaded firearm (§ 12031, defendant placed on probation for three years and committed to honor camp for six months), disturbing the peace (precise violation and disposition not specified), and resisting arrest (§ 148, a suspended three-year sentence imposed). In addition there were three other instances when defendant was arrested for violent conduct involving police officers, and the matters were either referred to the Youth Authority or defendant was fined. It also appears that at the time of his current conviction other criminal charges were then pending against him for driving while under the

judge "shall state the reasons for his sentence choice on the record at the time of sentencing. . . ." It is also provided in section 1170.3 that the Judicial Council shall adopt rules "providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision to: (a) Grant or deny probation. . . ."

Although the new legislative enactments are not now effective nor before us and we express no views thereon, we nevertheless note that rules similar to that sought in the instant case may be the subject of the new legislation or of Judicial Council rules to be formulated to implement the legislation.

[13]The probation officer responded to the judge's comment as follows:

"I agree, I think it is lenient. However, our records indicate we did work with this man for several years, and there are some positive things about him. At the same time, there are some negative things about him. . . . I am aware, your Honor, you are more familiar with this offense since it went to trial; however, I am . . . not that fully informed as to the facts of this offense as you may be."

The "positive things" to which the officer referred are stated in the report to be defendant's age (26), the birth of a child to defendant and his wife at about the time of his arrest, completion of the eleventh grade in high school and claimed attendance at a vocational training center and a city college, a desire to obtain employment or join the United States Navy so that he could provide for his welfare-supported wife and child, and the completion of a two-year probationary period for an earlier marijuana offense although it also appears that a still earlier grant of probation had been unsuccessfully terminated.

influence of drugs and for resisting arrest, and that he had been recently arrested on a complaint by his wife charging a battery but no criminal complaint had been filed. The record also discloses that defendant gave conflicting accounts of his role in the circumstances leading to his conviction. Defendant did not challenge the accuracy of any of the factual matters concerning his criminal record as stated in the probation report.

A denial of a grant of probation generally rests within the broad discretion of the trial court and should not and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner. (See *People* v. *Wade* (1959) 53 Cal.2d 322, 337-339 [1 Cal.Rptr. 683, 348 P.2d 116].) The discretion to *grant* probation is limited in the instant case, however, by the provisions of section 1203, subdivision (d), which at the time defendant was sentenced provided: "Except in unusual cases where the interests of justice demand a departure, probation shall not be granted to any of the following persons: . . . (2) Any person who has been previously convicted once in this state of a felony. . . ." (Stats. 1971, ch. 706, § 1, p. 1367.) Defendant, of course, had been previously convicted in this state of a felony.

We are compelled to conclude on the record before us that (1) the interests of justice do not require that the trial court depart from the mandate of section 1203, subdivision (d), and (2) that there was no abuse of discretion in denying the application for a grant of probation.

The judgment is modified by striking therefrom the imposition of any additional punishment by reason of section 3024. In all other respects, the judgment is affirmed.

Tobriner, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.

**CLARK, J.**—I concur in the judgment and in the opinion of the court insofar as it holds that a sentencing judge need not state his reasons for denying probation. However, rather than attempting to distinguish *In re Podesto* (1976) 15 Cal.3d 921 [127 Cal.Rptr. 97, 544 P.2d 1297], it should be overruled for the reasons stated in the dissenting opinion commencing at page 939.

McComb, J., concurred.