[Crim. No. 4803. Fifth Dist. Nov. 2, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
SEVERO LUJAN, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Augustus E. Noland, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Shirley A. Nelson and Joel Carey, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ANDREEN, J.**—Defendant appeals from a judgment of conviction in which he was sentenced to prison following his plea to a violation of Penal Code section 245, subdivision (a), assault with a deadly weapon.[1]

Because the defendant was 17 years of age at the time of the offense, he was referred to the Youth Authority pursuant to section 707.2 of the Welfare and Institutions Code for an evaluation concerning his amenability to their programs. The Youth Authority (Authority or YA)

---

[1]Charged violations of attempted murder and a Penal Code section 12022, subdivision (b), additional charge for use of a deadly weapon, a knife, and assault by means of force likely to produce great bodily injury, which arose out of the same incident and involved the same victim were dismissed on motion of the district attorney.

returned its diagnostic report in which it was found that the defendant was amenable to Authority rehabilitative programs.

At the hearing on the report, the probation officer differed with the Authority and recommended prison. The court sentenced the defendant to prison for the aggravated term of four years. The defendant has appealed, asserting that it was error to sentence him to prison rather than to commit him to the Authority.

## FACTS

Since defendant pled guilty, no facts were proven. According to the probation report, the victim, Steven Blueford, stated that he was walking through an alley on his way home in Modesto in the early-morning hours of July 1, 1979, when a vehicle approached him. Defendant, aged 17, and another individual (defendant's brother) got out, and defendant challenged Blueford to a fight. Blueford declined, but ultimately took a swing at defendant in self defense after defendant had swung at him; defendant thereupon drew a knife and chased Blueford to the end of the alley where he stabbed him in the lower abdomen, a deep wound requiring surgery and one week's hospitalization, although Blueford sustained no permanent damage. A few seconds after the stabbing, Romero Lujan, defendant's brother, began shooting in Blueford's direction with a handgun.

According to defendant, Blueford approached the car in which defendant, defendant's brother and sister-in-law were sitting and "was talking about a lot of stuff I didn't like." Defendant got out of the car and Blueford began to swing at defendant using a belt with a heavy buckle. Defendant pulled a knife to scare Blueford, and stabbed him in self defense after his "mind went blank."

### WAS THERE SUBSTANTIAL EVIDENCE TO SUPPORT A FINDING OF UNSUITABILITY FOR PROGRAMS?

*People* v. *Carl B.* (1979) 24 Cal.3d 212 [155 Cal.Rptr. 189, 594 P.2d 14] reversed a sentence to state prison of a person who was 17 years old following a plea of guilty to a charge of robbery (Pen. Code, § 211), with infliction of great bodily injury (*id.*, § 12022.7) and use of a firearm (*id.*, § 12022.5). At the hearing to enter the plea, he admitted that he had shot and robbed the victim, taking approximately $65 from him. A probation report disclosed that four years earlier, he had been placed

in a state forestry camp[2] after he was found in possession of a loaded pistol on school grounds. He was an escape risk, since after his apprehension on the robbery charge, he escaped and fled to another state, from which he was extradited.

After a remand to the Authority for an evaluation and report pursuant to section 707.2 of the Welfare and Institutions Code, the Authority submitted its report finding that defendant Carl B. was amenable to YA programs. The trial court sentenced him to prison because it was not "convince[d]" that he would not recidivate, and because the court wished to "protect society just as long as I can . . . ."

Although the trial court made no express finding that the defendant was not suitable for the Authority, the Supreme Court held that such a finding was implied in the trial court's ruling. Our high court held that although the trial court was not bound by YA's recommendation, expertise of the Authority is entitled to great weight and should be followed in the absence of substantial countervailing considerations. Such considerations were not extant in the case before it, since the Authority could confine the defendant for as long as his prison sentence, and YA's facilities are adequate for the training and treatment of serious offenders. The seriousness of a defendant's conduct, of itself, would not ordinarily constitute a legally sufficient ground for rejection of a YA recommendation under section 707.2. Since neither reason given by the sentencing court constituted a legally sufficient ground for rejecting YA's finding of amenability, its contrary implied finding lacked the support of substantial evidence.

■ It is our duty to apply *Carl B.* to the circumstances of the instant case. In the case before us, unlike *Carl B.*, the minor had a lengthy history. When he was eight years old, he was caught shoplifting, admitted his participation and was lectured and released to his parents. When 11 years old, he was adjudged a ward of the court for petit theft. He was released to his parents and ordered to make restitution. When 13, he was adjudged a ward for 2 counts of burglary, was placed on probation and released to his parents, but ordered to make restitution and ordered to a work detail. When 14, he was continued a ward of the court after a finding that he had committed burglary, petit theft, and a minor in possession of alcohol. While the same age, he ad-

---

[2]We are not told, but infer, that a juvenile court had committed the defendant to the Authority which placed him in camp.

mitted to a separate charge of public intoxication. While still 14, he was found to have committed a joyriding offense. He was removed from his parents' custody and committed to a forestry camp. At age 15, he was recommitted to a forestry camp program for burglary, violation of probation, runaway and escape. When 16, he was committed to the Authority after having committed a burglary, tampering with an automobile and assault with intent to commit great bodily harm. He was on parole from those offenses when he committed the instant charge.

This record supports the trial court's finding that his record went back to 1970, that he has been through the juvenile court system, and that there is little hope of rehabilitation by the Authority. It further substantiates the court's finding that the defendant's crimes are increasing in seriousness, and he is deeply ingrained in criminal activity. Also, as noted by the court, he was on parole at the time the crime was committed and his prior performance on parole was unsatisfactory.

The record satisfies the substantial evidence test of *Carl B.* that the defendant is not suitable for commitment to the Authority.

## WERE THE REASONS FOR THE SENTENCE CHOICE ADEQUATELY STATED?

█ It is contended that adequate reasons for the sentence choice were not stated as required by Penal Code section 1170, subdivision (c). The court noted that the defendant was on parole from the Youth Authority at the time of the offense, that his juvenile record dated back to 1970, his crimes are increasing in seriousness, and the present offense easily could have resulted in the victim's death. At the time of sentencing the court expressly gave as its reasons for selecting a prison term the defendant's past record, his numerous "brushes with the law," and its conclusion that the defendant was deeply ingrained in the elements of criminal activity. The defendant does not point out why this statement was inadequate nor does he explain what more, in his view, is required. (Cf. *People v. Pinon* (1979) 96 Cal.App.3d 904, 910 [158 Cal.Rptr. 425].)

## SUMMARY

A trial court faced with this case could well have decided to commit the defendant to the Authority. But there are "substantial countervail-

ing considerations" (*People* v. *Carl B., supra*, 24 Cal.3d at p. 215) to support the exercise of trial court discretion to sentence to prison.

The judgment is affirmed.

Zenovich, Acting P. J., and Woolpert (W. R.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.