[Crim. No. 5819. Fifth Dist. Nov. 30, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
ANGEL GEORGE BRACAMONTE, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Charles M. Bonneau, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and Arthur G. Scotland, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FRANSON, Acting P. J.—

STATEMENT OF THE CASE

On June 26, 1981, appellant pled guilty to assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and admitted the enhancement of intentional infliction of great bodily injury in the commission of a felony (Pen. Code, § 12022.7). Appellant was 19 at the time that he committed the assault. A hearing was held to consider the probation report and recommendation. The trial court rejected California Youth Authority (CYA) commitment ruling that, "This Court concurs with the Probation Office and feels that this Defendant is sufficiently mature both in age and life-style that a Youth Authority commitment is inappropriate." The court denied probation and ordered appellant committed to state prison for the middle term of three years, with an additional three years imposed due to the section 12022.7 enhancement.

## THE FACTS

Appellant and a friend were sitting in a vehicle drinking beer outside of the residence of Susan Del Rio. Ismael Avila drove up to the same residence and parked next to appellant's automobile. Avila, who had previously lived with Ms. Del Rio, entered the residence and asked the woman where she was going. She replied she was not going anywhere.

Avila left the residence and approached appellant's car. Appellant was observed holding a gun in his lap. Avila told appellant that he could leave because "Susan wasn't going nowhere." Appellant then got out of his car, approached Avila, and from approximately three feet away shot Avila in the neck. Avila is now permanently paralyzed as a result of the wound. Appellant testified he was provoked by Avila and struck him with the pistol causing it to discharge.

## DISCUSSION

■ Appellant contends that a CYA commitment is a "sentence choice" within the meaning of Penal Code section 1170, subdivision (c), and thus, the trial court must state its reasons on the record for rejecting such a commitment. Assuming that the trial judge in the instant case did not sufficiently state his reasons for rejecting a CYA commitment for appellant, we nonetheless hold that a statement of reasons was not required. The record clearly shows the trial judge considered a CYA commitment before sentencing appellant to prison.

Existing law provides that the trial court is not required to state reasons for rejecting a CYA commitment of a defendant who is *over 18* at the time of the commission of the crime. (See *People* v. *Moran* (1970) 1 Cal.3d 755, 762 [83 Cal.Rptr. 411, 463 P.2d 763]; *People* v. *Sparks* (1968) 262 Cal.App.2d 597, 600 [68 Cal.Rptr. 909].) A finding that the defendant is not suitable for CYA is implied when he is sentenced to state prison. (*People* v. *Lujan* (1981) 125 Cal.App.3d 166, 170 [178 Cal.Rptr. 122]; cf. *People* v. *Ramos* (1980) 106 Cal.App.3d 591, 599-600 [165 Cal.Rptr. 179].) In addition, the advisory committee comment, California Rules of Court, rule 443 provides, "Neither section 1170(c) nor [the Cal. Rules of Court] requires the judge to give reasons explaining why possible dispositions were rejected; for example, the judge must state his reasons for imposing a prison sentence, but need not explain why he . . . did not commit an eligible youth to the Youth Authority." (See *People* v. *Taylor* (1980) 112 Cal.App.3d 348, 366 [169 Cal.Rptr. 290]; *People* v. *Butler* (1980) 107 Cal.App.3d 251 [165 Cal.Rptr. 709].)

Appellant nevertheless contends *People* v. *Lock* (1982) 30 Cal.3d 454 [179 Cal.Rptr. 56, 637 Cal.Rptr. 292], by analogy, mandates that reasons be given for rejection of CYA commitment. In *Lock,* the defendant, who was found to be a mentally disordered sex offender (MDSO), was denied treatment in a state hospital or other mental health facility and sentenced instead to state prison. Former Welfare and Institutions Code section 6316 created a statutory scheme that involved a multistep procedure: first, the court determined if the defendant was an MDSO; and second, the court was required to find whether or not the defendant could benefit from treatment in a state hospital. If the trial court found that the defendant was an MDSO and would benefit from treatment, it then had the discretion to commit the defendant as an MDSO or returning him to the criminal court.

The Supreme Court declared in *Lock*: "Until recently no statute or rule of court demanded that the trial court state its reasons for the exercise of its discretion and, were the matter still ours to decide, we might have difficulty distinguishing the decision to handle a defendant as an MDSO or as a criminal from the decision to grant or deny probation which, as we held in *People* v. *Edwards* (1976) 18 Cal.3d 796, 800-805 . . . , does not call for a statement of reasons. The matter has, however, been taken out of our hands. Section 1170, subdivision (c) of the Penal Code commands that the 'court shall state the reasons for its sentence choice on the record at the time of sentencing.' Rule 405(f) of the Sentencing Rules for the Superior Courts, part of the California Rules of Court, defines 'sentence choice' to mean 'the selection of any disposition of the case which does not amount to a dismissal, acquittal, or grant of a new trial.' Further, while technically MDSO proceedings are not part of the criminal sentencing proceedings (*People* v. *Loignon* (1967) 250 Cal.App.2d 386, 389 . . .), rule 453 makes it clear that—for obvious practical reasons—the Sentencing Rules encompass the decision to commit or not to commit a defendant as an MDSO. Therefore, that decision is a 'sentence choice.'

"The clear legislative purpose in commanding trial courts to state reasons for their sentence choice is to permit meaningful review. (Cf. *People* v. *Edwards, supra,* 18 Cal.3d at p. 804; *In re Sturm* (1974) 11 Cal.3d 258, 269-270 . . . .) Obviously such review is impossible where the court states no reasons whatever as, at least technically, was the case here." (*Id.,* at p. 459, fn. omitted.)

We decline to interpret *Lock* to mean that rejection of CYA involves a sentence choice requiring a statement of reasons. In *Lock* the trial court had terminated MDSO proceedings, reinstated criminal proceedings, and sentenced Mr. Lock to state prison without first following the *statutory mandate* of determining whether the defendant could or could not benefit from treatment as an MDSO. (See former Welf. & Inst. Code, § 6316.) In reversing the judgment, the Supreme Court merely held that "the trial judge abused its discretion under

section 6316 when it failed to indicate the reasons for not committing defendant as an MDSO, particularly since the record indicates that the court may have had "an erroneous view of the consequences of an MDSO commitment." (*People* v. *Lock, supra,* at p. 460.)

As the Attorney General notes, unlike MDSO proceedings, there is no statutory requirement that a trial court make a finding on the record whether the defendant can or cannot benefit from a CYA commitment. That finding is expressly reserved for the CYA under Welfare and Institutions Code section 1731.5.[1]

We recognize *Lock* contains dicta which could be interpreted as overruling *People* v. *Edwards* (1976) 18 Cal.3d 796 [135 Cal.Rptr. 411, 557 P.2d 995]. In *Lock* the Supreme Court acknowledged that it might have "difficulty distinguishing the decision to handle a defendant as an MDSO or as a criminal from the decision to grant or deny probation which, as we held in *People* v. *Edwards* . . . , does not call for a statement of reasons. The matter has, however, been taken out of our hands." (*People* v. *Lock, supra,* at p. 459.)

*Edwards* was decided under the indeterminate sentencing law and holds that reasons need not be stated when denying probation because such a denial is a judicial act rendered with the full panoply of procedural protections, i.e., a probation officer's report, a requirement that the judge verify he has read and considered the report, and an opportunity for the defendant to present probation counselors with out-of-court character testimony and explanations of guilt. Thus, the complete record of the proceedings is available for appellate review. (*People* v. *Edwards, supra,* 18 Cal.3d at p. 803 [135 Cal.Rptr. 411, 557 P.2d 995].)

We decline to interpret the dicta in *Lock* as overruling the holding in *Edwards* and thus, by analogy, the holding in *Moran.* As long as the record reflects that the judge considered a CYA commitment, his statement of reasons for imposing a prison term will suffice for the purpose of appellate review of the CYA rejection. (*People* v. *Edwards, supra,* 18 Cal.3d at p. 805; *People* v. *Moran, supra,* 1 Cal.3d at p. 762; *People* v. *Lujan, supra,* 125 Cal.App.3d at p. 170; *People* v. *Ramos, supra,* 106 Cal.App.3d at pp. 599-600; *People* v. *Sparks, supra,* 262 Cal.2d at p. 600.)

Since we conclude the trial court is not required to state its reasons for rejecting a CYA commitment, we need not consider the adequacy of the reasons stated in the present case. Suffice it to say, the trial court adequately

---

[1]Welfare and Institutions Code section 1731.5, subdivision (b), provides in pertinent part: "The Youth Authority shall accept a person committed to it pursuant to this article if it believes that the person can be materially benefited."

explained its reasons for sentencing appellant to state prison and appellant does not contend to the contrary.

The judgment is affirmed.

Zenovich, J., and Quall, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 2, 1983.

---

*Assigned by the Chairperson of the Judicial Council.