Filed 3/17/14  P. v. Price CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057200 |
| v. | (Super.Ct.No. BAF1200110) |
| CALVIN EDWARD PRICE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael B. Donner, Judge.  Affirmed.

Christian Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Calvin Edward Price appeals after he was convicted by a jury of one count of petty theft with three prior theft-related offenses. Defendant had admitted the specified three prior theft-related offenses, admitted four prison term priors, and one strike prior. Defendant contends that the trial court erred in declining to dismiss his strike prior and treat him as a non-strike offender. We affirm.

FACTS AND PROCEDURAL HISTORY

A loss prevention agent (Edward Marquez) was working at a Home Depot store on the afternoon of December 29, 2011. Marquez observed defendant and another man, David Davis, come into the store together at approximately 1:00 p.m. Davis and defendant moved through the store, pushing a shopping cart. Marquez saw Davis put a number of items from the plumbing department into the cart. Defendant did not appear to have personally placed anything into the cart, although he stood next to Davis while Davis did so.

The pair eventually moved to the hardware department, where defendant placed several handfuls of small cabinet knobs into the cart. Each of the knobs had a value of approximately $6 to $9.

Defendant and Davis pushed their cart to the outdoor garden area of the store. They removed merchandise from the cart and hid the items in their clothing. Defendant placed three or four handfuls of items in the front pouch pocket of his sweatshirt. Both men then left the store through the garden center exit, without paying for any merchandise.

2

Marquez accosted both Davis and defendant about five feet outside the store. He physically restrained Davis, but defendant kept walking into the parking lot. Defendant had his hands inside his pockets and shouted at store employees to back off, and yelled that, if anyone touched him, there would be trouble. Defendant entered his car and drove away.

Davis was handcuffed at the scene. Some, but not all, of the merchandise Marquez had seen the men take was found in Davis's possession. No merchandise was ever recovered from defendant.

Defendant was charged, as noted, with one count of petty theft with three priors, four prison term priors, and one prior strike offense, a robbery committed in 1981. The jury found defendant guilty as charged on the current petty theft; defendant had a bifurcated trial on all the priors, including the three specified prior theft offenses, as well as the prison term priors and the strike. Defendant decided to admit all the bifurcated allegations. He did, however, ask the trial court to exercise its discretion to dismiss his strike prior (see *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497); he argued that his personal history and the current offense placed him outside the scope of the "Three Strikes" law.

More specifically, defendant urged that the nature of his current conviction was "not violent and truly could have been charged as a misdemeanor." He claimed that "the entire case . . . stems from a simple theft from Home Depot. This offense is incredibly minor when compared with other felony crimes. [It was] a property crime. None of

3

[defendant's] actions in the present case involved any danger to the community in that no weapon was ever used or threatened."

He summarized his relevant criminal history, including his strike conviction for robbery as a juvenile in 1981, claiming that defendant was the getaway driver in that offense. Otherwise, he was convicted of grand theft in 1998; convicted of burglary in 1998, for which he was sentenced to three years' imprisonment; convicted of burglary in 2003; convicted of assault with a deadly weapon in 2007 (claimed to be a non-strike conviction, as defendant struck a family member with a crutch); convicted of petty theft (with a prior) in 2009, for stealing alcohol and other merchandise from a discount department store, for which defendant was sentenced to 16 months' imprisonment; and convicted of grand theft in 2010 for stealing alcohol from a grocery store, with a two-year state prison sentence. Defendant admitted that these offenses in his history "are not far apart in time," but he claimed that he "learned from his last offense. [Defendant] does not make excuses for his actions," but proceeded to make excuses by pointing to "a context overshadowed by drugs/alcohol and economic hardships."

Defendant's personal background was good. He had caring parents and good support. As a teenager, he had mapped out a career choice to follow his father into the Navy, but he became involved as the getaway driver in a robbery. Then, "his entire life changed course." Defendant pleaded guilty. He did not know at the time that the Three Strikes law would be enacted, so he was never advised, as a consequence of his plea, that he might in the future be subject to treatment as a recidivist under the Three Strikes law.

4

Defendant spent some time in the custody of the California Youth Authority; after his release, he was on parole for nine years, which he completed without violation. Unfortunately, however, defendant later resumed his life of crime after completing his sentence and parole on his juvenile offense. Nevertheless, defendant claimed that he now "realizes the error of his ways," and he "regrets a lot of the choices he has made in the past." Defendant recognized that "he will be receiving significant jail time on this case." He acknowledged that he "has not remained crime free since picking up his only strike offense," but he argued that "the crimes [defendant] has committed have not been repeated crimes of violence. In fact, his crimes have not worsened or increased in nature or offense, thus [defendant] falls outside the legislative intent of the Three Strikes [l]aw." Defendant claimed that he "can participate in society. He is not a danger to society. If the Court sentences him according to [defense] counsel's recommendation, he will have been appropriately punished and will not be a further danger to society." Defendant reiterated that he had "obtained his strike prior in 1981. He would not ha[ve] been advised of the consequences of the strike prior at the time of the conviction because the Three Strikes [l]aw had not been enacted at that time. It would be unfair to punish [defendant] as under the [T]hree [S]trikes law when he was not so advised."

The trial court declined to exercise its discretion in defendant's favor, and refused to dismiss defendant's strike prior. The court then proceeded to sentence defendant as a second strike offender under the Three Strikes law: defendant received the aggravated term of three years for the principal offense, doubled to six years as a second striker. The

5

court also imposed one year for each of defendant's prior prison term enhancements. Defendant's total term of imprisonment was therefore 10 years.

Defendant now appeals.

## ANALYSIS

### I. Standard of Review

Trial courts have discretion under Penal Code section 1385 to dismiss three strikes allegations in the furtherance of justice. In deciding whether to exercise this discretion, the trial court must take into consideration the defendant's background, the nature of the current offense and other individualized considerations. (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th 497, 531.) In making its determination, the court must take account of those factors underlying the purposes of the three strikes scheme, including the nature and circumstances of the defendant's present felony or felonies, as well as his or her prior serious or violent felony convictions, and the particulars of the defendant's background, character, and prospects. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) We review the trial court's decision under the abuse of discretion standard. (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 992–993.) When determining whether to dismiss a three strikes allegation, the trial court must consider whether, in light of all these considerations, the defendant may be deemed to be outside the three strikes scheme in whole or in part. (*Id*. at p. 993.)

Defendant urges that, while the trial court's decision not to dismiss a strike is reviewed only for abuse of discretion, "such standard is deferential but not empty."

6

(Citing *People v. Carmony* (2004) 33 Cal.4th 367, 376; *People v. Garcia* (1999) 20 Cal.4th 490, 503.)  The circumstances that will demonstrate an abuse of discretion are "highly limited, but do include instances where the court was not aware of its discretion, the court considered impermissible factors, or the sentencing norms of the Three Strikes law produce an arbitrary, capricious or patently absurd result."  (Citing *People v. Carmony*, *supra*, 33 Cal.4th 367, 378.)

## II.  The Trial Court Did Not Abuse Its Discretion in Refusing to Dismiss Defendant's Strike Prior

The trial court in this case did not abuse its discretion in refusing to dismiss defendant's strike prior.

As to the nature of defendant's current offense, the charge in itself is minor—theft of perhaps $100 or so in merchandise from a home and garden center.  However, the current offense is also one in a long string of offenses by defendant.  Indeed, the current offense was elevated to felony status not merely, as formerly, because defendant had committed one additional theft-related offense, but because, under a newly amended version of the statute, he had committed at least three prior theft offenses.  The proven conduct in relation to the current offense also shows that defendant initially evaded capture by becoming belligerent and threatening toward loss prevention employees of the store.  It was only because defendant threatened violence—by holding something, which may have been a weapon, hidden in the pouch pocket of his sweatshirt, and by making

verbal menaces—that he was able to get into his car and drive away. The circumstances of the current offense do not demonstrate that defendant is a petty or harmless criminal.

As to defendant's prior record of serious or violent offenses, he had only the one strike, which occurred in 1981. However, by his own admission, this single mistake overturned the entire arc of his life.

The particulars of defendant's background, characteristics, and prospects following his strike conviction, made an extremely poor prognosis for rehabilitation. After his strike conviction as a juvenile in 1981, defendant spent several years on parole. He was eventually discharged from parole in 1987.

Within a few years, defendant racked up a considerable recidivist record: He was convicted of (1) misdemeanor theft in Texas in 1993; (2) misdemeanor grand theft in California in 1998 (he violated probation several times in connection with the 1998 grand theft offense); (3) a California felony grand theft, also in 1998 (defendant also violated probation several times in connection with this offense); (4) felony second degree burglary in California in 1998 (defendant violated probation and was sentenced to prison on this offense, and he had several parole violations after his release); (5) a California conviction for driving under the influence in 1999 (several probation violations occurred with respect to this conviction); (6) misdemeanor conviction of petty larceny in Nevada in 2000; (7) a California misdemeanor conviction for taking and driving a motor vehicle (defendant had multiple probation violations in the course of serving his sentence on this crime); (8) a California felony conviction for forgery in 2003 (defendant had multiple

8

violations of probation in connection with this offense); (9) a misdemeanor conviction of driving with a suspended license in 2006; (10) a felony conviction in California in 2008 for assault with a deadly weapon (defendant violated probation, which was revoked, and he was sentenced to prison and then paroled); (11) a California felony theft conviction in 2009 (defendant was given a prison sentence and was paroled; his parole was violated and he was returned to custody more than once before discharge); (12) another California conviction of felony theft, with the same 2009 date of conviction (defendant had the same parole violations as with his other 2009 felony theft conviction); and (13) a California conviction of felony grand theft in 2010 (defendant received a prison sentence, was paroled and again had multiple parole violations before discharge).

Defendant committed the instant offense only a short time (less than one year) after his last discharge from parole (on the three prior California theft-related offenses in 2009 and 2010).

Defendant has displayed an utter inability to conform his conduct to the requirements of the law. By and large, his crimes tended to involve theft rather than overtly violent conduct, but that does not mean that he is not a danger to society. Economic crimes are not harmless. In addition, defendant has not shown himself to be above resorting to violent criminal conduct: He was willing at the beginning of his career to take part in a robbery. He was also willing to use a crutch as a club against a family member. In the instant case, he resorted to menace to get away with his crime.

9

Defendant's crimes may not be highly sophisticated, but he did plan the instant crime and acted in concert with another. There is also some suggestion that defendant participated in ongoing fraud and theft schemes: that is, the Home Depot loss prevention officer who observed the offense in this case was well familiar with defendant. Defendant often brought merchandise to the store, without a receipt, to make "returns" of the merchandise for cash. Defendant had "returned" merchandise to the store, from time to time, with a total value of about $7,000. The loss prevention officer could not be certain whether the "returned" merchandise was stolen, but he believed similar schemes to be a common strategy of criminals to obtain cash.

Defendant's record demonstrates beyond question that he is a career criminal, a recidivist offender, and someone who absolutely falls well within the spirit and letter of the Three Strikes law. The trial court did not abuse its discretion in declining to dismiss defendant's strike prior.

III. The Trial Court Did Not Abuse Its Discretion in Sentencing Defendant

Defendant hints that, not only did the trial court abuse its discretion in declining to dismiss defendant's strike, the sentence itself was improper. Defendant suggests that a term of 10 years imprisonment was inappropriate, because of the supposed minor nature of the present offense: all defendant did was "steal a few dollars worth of . . . knobs from Home Depot."

10

The selection of the appropriate sentence is a matter for the trial court's discretion. (*People v. Edwards* (1976) 18 Cal.3d 796, 807.)  Defendant has not shown that the trial court's sentencing decision was irrational or arbitrary; in the absence of such showing, the selection of sentence is presumed to be for legitimate sentencing objectives.  The court's decision to impose a particular sentence will not, in the absence of such showing, be set aside on review.  (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

Here, defendant was an unrepentant career thief.  He continued to deny and minimize all his criminal behavior, including denying complicity in the instant offense. He claimed that he merely stood by and had no idea that his codefendant Davis was stealing anything.  He had not reformed himself after his initial brush with the law as a young adult.  Lenient treatment had not caused him to change his ways.  Imprisonment had taught him nothing.  He performed poorly when granted probation or when he was on parole.  He had not been convicted of many violent offenses, but he had one prior serious or violent felony conviction, and another conviction for assault.  He also used belligerence and menace to get away in the instant case.  The trial court could rationally determine that long-term separation from society is the only means of protecting the public from defendant's predatory criminal behavior.  The trial court did not abuse its discretion in selecting defendant's sentence.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:


HOLLENHORST
        Acting P. J.


KING
        J.