[Crim. No. 2632. Fifth Dist. Jan. 14, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
DEMETRIO MENDOZA VILLARREAL, Defendant and Appellant.

940

**COUNSEL**

Melvin W. Nitz, Public Defender, and Salvatore Sciandra, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GARGANO, J.**—Appellant appeals from a judgment entered on his plea of guilty to the crime of possession of LSD for sale (Health & Saf. Code, § 11378). The offense stemmed from certain undercover narcotics activities conducted by Agents Pierce and Carpenter of the bureau of narcotics enforcement; appellant was sentenced to state prison for the term prescribed by law. Appellant's appeal has raised a fundamental and serious issue. He contends that the district attorney not only deliberately failed to comply with the terms of a plea bargain, but that the district attorney was guilty of misconduct because he actively interfered with the preparation of the presentencing probation report by the Fresno County Probation office.

We recite the facts briefly.

On August 18, 1975, a criminal complaint was filed in the Municipal Court for the Fresno Judicial District of Fresno County charging appellant and two others, Richard Samora and Jerry Salley, with the sale of LSD in violation of section 11379 of the Health and Safety Code; they also were charged with conspiracy to sell the drug. In addition, Jerry Salley was charged with possession of marijuana. Appellant was represented by Deputy Public Defender Charles Soley; Richard Samora was represented by Attorney George Carter; Jerry Salley was represented by Attorney Robert Patch.

Shortly after the charges were filed in the municipal court, Mr. Soley talked with Agents Pierce and Carpenter concerning the possibility of his entering into a plea bargain on behalf of his client; he asked the agents if they would recommend to the Fresno County District Attorney's office that appellant receive as punishment only local time in the county jail. The agents agreed and then talked to Deputy District Attorney Gene Gomes who was in charge of the prosecution; they informed Gomes that the bureau of narcotics enforcement would not object if appellant were

permitted to plead guilty to possession of LSD and if he were given time in the county jail instead of a state prison sentence. They further indicated that, if favorable treatment were given to appellant, the same treatment should be given to Samora. Gomes informed the agents that he did not have the authority to enter into plea bargains and suggested that they talk to his superior, Dennis Caeton. Later, Gomes was told that the plea bargain was acceptable to Mr. Caeton.

On November 3, 1975, appellant and Richard Samora appeared in the municipal court and offered to enter pleas of guilty to the lesser included offense of possession of LSD for sale. Through their attorneys, they informed the magistrate that there had been a plea bargain between the defendants and the district attorney and that as a part of the plea bargain the district attorney had agreed to dismiss the conspiracy charge and had "guaranteed" that the sentence imposed by the sentencing court would be served in the county jail. Thereupon, the magistrate accepted the conditional pleas and certified the two men to the superior court for sentencing; at the same time, he ordered the county probation officer to prepare presentencing reports.

The task of investigating the background of the two defendants and writing the probation reports was assigned to Deputy Probation Officer Dan Ronquillo. Ronquillo talked to Deputy District Attorney Gene Gomes and was informed of the discussions which Gomes and Mr. Caeton had had with Agents Pierce and Carpenter concerning a favorable recommendation for local time. Ronquillo also examined the district attorney's files and the crime reports prepared by the agents of the bureau of narcotics enforcement. Then, the deputy probation officer prepared full written reports recommending that appellant and Samora be granted probation on condition that they serve some time in the county jail.

In making the favorable recommendations, Mr. Ronquillo considered the following factors: A conditional plea based on local time had been entered into with the district attorney, and Deputy District Attorney Gomes indicated he favored the plea; the bureau of narcotics enforcement also favored local time; neither appellant nor Samora had prior criminal records, and both had received favorable recommendations from reputable members of the community; the crime reports from the bureau of narcotics enforcement suggested that, although the sale on which the charge was predicated was one of the largest in Fresno history,

appellant and Samora's venture into the criminal activity in question was an "isolated" incident for them; appellant and Samora both had good work records, and neither had been in trouble since being released on bail; even though Jerry Salley was involved more deeply in the incident than appellant and Samora, the district attorney's office was offering him a plea to only misdemeanor possession.

On November 20, 1975, Mr. Ronquillo's probation reports were signed and delivered to the superior court. On the same day, Deputy Probation Officer "Chad" Chaderjian met District Attorney William Smith in the county garage and told him that the probation office had recommended local time for appellant and Samora as the result of the plea bargain entered into by the district attorney's office. Upon receiving this information, Mr. Smith, who had adopted an office policy that there would be no plea bargains for local time in connection with crimes involving the sale of drugs, became very agitated. He immediately returned to his office to ascertain who had violated the office policy.

On the following day, the district attorney went directly to Chaderjian and obtained copies of the probation reports prepared by Mr. Ronquillo. After reading the reports, Smith conveyed his dissatisfaction to Chaderjian and told him that appellant and Samora should be sentenced to state prison; Smith said he was going to discuss the matter with James Rowland, the chief probation officer. Later that day, Smith met with Rowland and told him that one of the probation officers, on the basis of inaccurate information, had reached improper conclusions in connection with the probation reports in question.[1] The district attorney also told Mr. Rowland that appellant and Samora should go to state prison.

After meeting with the district attorney, Chief Probation Officer Rowland secured a week's continuance for the hearing on the presentencing reports prepared by Mr. Ronquillo, which had been scheduled for November 24, 1975. Then Rowland called a staff meeting; this

---

[1]The only "misinformation" contained in the probation reports was the fact about the misdemeanor possession offense being offered to Jerry Salley. According to Deputy District Attorney Gene Gomes, who also was in charge of Salley's prosecution, Salley had been offered a plea to a felony possession offense because of his cooperation with agents of the bureau of narcotic enforcement, and the felony later could be reduced to a misdemeanor if Salley successfully fulfilled the conditions of his probation. For reasons not disclosed in the record, this offer to Salley apparently had been revoked by the time District Attorney William Smith talked to Chief Probation Officer James Rowland.

meeting was attended by several senior staff members, Ronquillo and Ronquillo's immediate supervisor, Richard Simonian.

At the staff meeting, Mr. Rowland announced that it was *his* policy that major dealers in drugs should be given harsh recommendations and that this policy pertained to appellant and Samora. He then directed Richard Simonian to write supplemental presentencing reports and to evaluate his recommendations in light of the policies discussed at the staff meeting. Thereupon, Mr. Simonian—who was aware of the fact that his superior had talked to the district attorney and that the district attorney was upset over the initial recommendations—prepared supplemental presentencing reports recommending that appellant and Samora be sentenced to state prison.

At the sentencing hearing, the trial judge informed appellant and Samora that he was going to accept the new recommendations of the probation office and sentence them to state prison. He also informed the two defendants that because the court was not going to approve the plea bargains, they were entitled to withdraw their respective pleas of guilty to possession of LSD for sale. However, appellant and Samora indicated that they did not want to withdraw their pleas of guilty, and the court sentenced each defendant to state prison, pursuant to section 1168 of the Penal Code. Then, when appellant indicated that he intended to appeal, the court commendably granted him a stay of execution of sentence in order to give appellant the opportunity to appeal from the judgment.

█ It cannot be denied that the district attorney was guilty of a gross impropriety. He not only deliberately breached a plea bargain entered into by his deputies, but he also made a successful, ex parte attempt to induce the probation department to change its favorable recommendations even though the probation reports were completed and filed with *the superior court in anticipation of a presentencing hearing.* (Cf. ABA Project on Minimum Standards for Crim. Justice, Stds. Relating to the Prosecution Function and the Defense Function (Approved Draft 1971) std. 2.8(c); *In re Calhoun* (1976) 17 Cal.3d 75, 83, fn. 6 [130 Cal.Rptr. 139, 549 P.2d 1235].) If the district attorney believed that his deputies exceeded their authority when they entered into the plea bargains with appellant and Samora, or if he felt that there was a change in circumstances warranting new and different recommendations as to the sentences to be imposed, he should have notified defense counsel

promptly and then presented his position to the court in a forthright manner at or before the presentencing hearing.[2]

■ Nor can we condone the conduct of the probation officer. He not only acquiesced to the wishes of the district attorney, but he adopted a policy which in our view is totally inconsistent with the function of a probation department. It is elementary that a county probation department is an arm of the superior court (*In re Giannini* (1912) 18 Cal.App. 166, 169 [122 P. 831]) and that one of its main purposes is to assist the court in arriving at a just decision in denying or granting an application for probation (*People* v. *Edwards* (1976) 18 Cal.3d 796, 801 [135 Cal.Rptr. 411, 557 P.2d 995]; see ABA Project on Standards for Criminal Justice, Stds. Relating to Probation (Approved Draft 1970) std. 2.2). It is also fundamental that the probation decision should not turn solely upon the nature of the offense committed, but ". . . should be rooted in the facts and circumstances of each case." (ABA Project on Standards for Crim. Justice, Stds. Relating to Probation (Approved Draft 1970) std. 1.3(a); quoted in *People* v. *Edwards, supra,* 18 Cal.3d 796, 801, fn. 6.) Consequently, in preparing presentencing reports, probation officers should evaluate each case on its own merits, unfettered by fixed and inflexible policies adopted to conform with the ideas of prosecuting authorities. (See generally ABA Project on Standards for Crim. Justice, Stds. Relating to Probation (Approved Draft 1970) stds. 1.3, 2.2, 2.3.) It seems clear to us that the degree of objectivity so essential to minimum requirements of due process was lacking in this case.

The real problem is to devise an appropriate solution.

We, of course, could direct the district attorney to comply with the plea bargain as we did in *People* v. *Newton* (1974) 42 Cal.App.3d 292, 298-299 [116 Cal.Rptr. 690]. However, we do not believe that this course of action would serve a useful purpose. In *Newton* the failure to comply with the plea bargain was inadvertent and there were no improprieties of

---

[2]On this very point, the American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function (Approved Draft 1971) standard 4.3, subdivision (c), specifies that "[i]f the prosecutor finds he is unable to fulfill an understanding previously agreed upon in plea discussions, he should give notice promptly to the defendant and cooperate in securing leave of the court for the defendant to withdraw any plea and take other steps appropriate to restore the defendant to the position he was in before the understanding was reached or plea made." (See also, ABA Project on Standards for Crim. Justice, Standards Relating to Sentencing Alternatives and Procedures (Approved Draft 1971) stds. 4.5(b), and 5.3(d)(i)(A).)

any kind. Here, the district attorney's failure to comply with the plea bargain made by his deputies was deliberate, and the superior court, understandably, would not be influenced by a pro forma recommendation of leniency made under judicial compulsion from this court. Furthermore, such an order would not erase the improprieties which occurred in connection with the preparation of the presentencing report the court considered before imposing sentence.

The solution we favor, and the one both sides acknowledged at oral argument before this court to be a fair and appropriate solution to this case, is for the trial court to set aside the sentence it imposed against appellant so that the court may obtain a new probation report from a probation department in some other county which is untainted by the improprieties of the district attorney and Mr. Rowland. If, after receiving the new probation report, and after conducting a hearing thereon, the trial court still elects to sentence appellant to state prison instead of granting appellant probation on the condition that he serve local time, it should again give appellant the opportunity to withdraw his plea of guilty to possession of LSD for sale and to enter a new plea.

The judgment is reversed, and the cause is remanded with directions to the trial court to set aside its sentence and to take such action as necessary to conform with the views expressed in this opinion.

Brown (G. A.), P. J., and Franson, J., concurred.