[Crim. No. 11715. Fourth Dist., Div. One. Oct. 26, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR SERVER, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Paul Bell, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, J. Richard Haden and Richard D. Hendlin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, J.—Victor Server challenges the propriety of his sentencing after he was referred back to court from Patton State Hospital where he had been committed as a mentally disordered sex offender (MDSO) following his conviction of several sex offenses. He contends he was de-

nied due process in that the probation officer acted as an arm of the district attorney's office in changing the recommendation from concurrent to consecutive sentencing and, alternatively, the court's 1977 determination of a seven-year maximum term of confinement cannot be fairly changed several years later because a defendant has a right to know the maximum term within a reasonable time of his original commitment. For the reasons which follow, we conclude these contentions to be meritless and, accordingly, affirm the judgment.

### Factual and Procedural Background

Server and his wife were tried and found guilty by the court in October 1977 of rape by threat of great bodily injury (Pen. Code, §§ 261, subd. 3, 264.1),[1] forcible oral copulation (§ 288a, subd. (d)) and attempted sodomy (§§ 664 and 286), all committed in concert. Sentencing was originally calendered for November 3, 1977. The probation officer's report listed six circumstances in aggravation and no circumstances in mitigation, recommending the upper term of seven years for the rape in concert. With regard to concurrent or consecutive sentencing, the report stated: "None of the criteria under Judicial Council Rule 425 would seem to call for consecutive sentencing in this case. All the conditions seem to relate to one crime and one victim." Due to the unusual circumstances surrounding this case of Server's wife being present and acting as a coparticipant in the crimes, the probation officer recommended criminal proceedings be suspended and Server be certified for examination to determine whether he was an MDSO pursuant to Welfare and Institutions Code section 6300 et seq. With the concurrence of both counsel, the court adjourned the proceedings for Server's examinaton as an MDSO. On November 14, 1977, the court found him to be an MDSO and committed him to Patton State Hospital. Pursuant to Welfare and Institutions Code section 6316.1, the court declared: "The maximum term is seven years, I gather?" The deputy district attorney replied in the affirmative.

On December 4, 1979, Patton State Hospital referred Server back to the court stating he could not benefit from further care and treatment at the hospital but that he remained a danger to the health and safety of others. At sentencing, a supplemental probation report was filed by a different probation officer, stating: "Considering the callousness exhib-

---

[1]All statutory references are to the Penal Code unless otherwise specified.

ited during this crime and the defendant's acknowledgement that the crime was mostly his idea, it appears that consecutive sentences are warranted. The request for consecutive sentencing appears further encouraged in just such specific instances as are before the Court this date, according to Deputy District Attorney Brad Hallan. Mr. Hallan notes, 'According to recent case law (People versus Perez 23 Cal.3d 545), for each sexual act perpetrated the defendant can be sentenced consecutively and, in fact, that appears to be the intent of the new case law.' Mr. Hallan further indicated that there is an additional case law which clarifies the matter even further; however, at the time of the conversation, he was unable to recall the exact case." The report further noted the sentencing calculations, which varied from the original report, were made following a discussion "of consecutive sentencing with the Deputy District Attorney."

On February 25, 1980, the scheduled sentencing date, defense counsel requested and received a continuance because he had not received the probation report in a timely manner. A second supplemental probation report was prepared for the March 10th hearing date which calculated the consecutive prison term at nine years and reiterated that the calculations were made after discussing the issue of consecutive sentencing with the deputy district attorney. At sentencing, both counsel argued the applicability and import of *People* v. *Perez* (1979) 23 Cal.3d 545, 550-554 [153 Cal.Rptr. 40, 591 P.2d 63, 3 A.L.R.4th 339], which held that section 654 does not preclude consecutive sentencing of defendant for forcible rape, forcible sodomy and forcible oral copulation, all of which were committed against one victim during a single course of conduct where none of the offenses were committed either as a means of committing any other or were incidental to the commission of any other. The trial court declared that the case "merely construed the existing law ... [and] didn't create new law...." Then the trial court sentenced Server to consecutive sentences, an aggregate term of nine years, stating: "The reasons that the Court is making these consecutive is that this is not the first serious crime that he has committed within the last few years. His crimes are becoming more serious, more vicious. Next, the actions of the defendant were especially cruel psychologically in the method in which he and his wife performed these series of successive and separate acts of rape, perversion, and attempted sodomy. They were cruel in a way that one finds it difficult to imagine, and they attacked the integrity and physical and mental and emotional well-being of the victim."

I

In reliance upon *People* v. *Villarreal* (1977) 65 Cal.App.3d 938 [135 Cal.Rptr. 636], Server first contends he was denied due process in that the probation officer abandoned her position as an objective adviser to the court and assumed the status of an arm of the district attorney's office by communicating with the latter and changing the recommendation from concurrent to consecutive sentencing.[2] His reliance upon *Villarreal* is misplaced.

In *Villarreal*, a deputy district attorney having authority to enter plea bargains accepted a plea bargain with the public defender providing defendant would plead guilty to possession of LSD for sale in return for county jail time and probation rather than a prison sentence. When the district attorney later heard of the plea bargain, he became very agitated because of his office policy there would be no such bargains for local time in connection with crimes involving the sale of drugs. He told the chief probation officer defendant should go to prison. As a result, the latter announced a policy to his deputies to give harsh recommendations in such cases and directed a supplemental probation report to be written recommending defendant be sentenced to prison. The court followed this recommendation. The Court of Appeal reversed the judgment holding in pertinent part that the district attorney was "guilty of a gross impropriety" in "not only deliberately breach[ing] a plea bargain entered into by his deputies, but . . . also [by making] a successful, ex parte attempt to induce the probation department to change its favorable recommendations even though the probation reports were completed and filed with the superior court in anticipation of a presentencing hearing." (*People* v. *Villarreal, supra,* 65. Cal.App.3d at p. 944.) Regarding the actions of the probation department, the court stated: "Nor

---

[2] Server also argues that *People* v. *Perez, supra,* 23 Cal.3d 545, did not constitute new law and that the statement in the first supplemental probation report that consecutive sentencing "appears to be the intent of the new case law" is incorrect, misleading and contrary to the basic principles that the determination to sentence consecutively is predicated upon the facts of each individual case and remains within the sound discretion of the trial judge. Thus, he contends there exists no justification for the change in recommendation to consecutive sentences. However, he grants it is difficult to establish prejudice from the cited reference to *Perez,* since the trial judge declared before sentencing that *Perez* had not changed the law. In light of the trial judge's proper construction of *Perez* and the accompanying presumption the trial court acted properly in both a procedural and individually factual context in ruling upon the matter, we can perceive of no prejudice to Server arising from the citation to *Perez* and the quoted statement in the supplemental probation report.

can we condone the conduct of the probation officer. He not only acquiesced to the wishes of the district attorney, but he adopted a policy which in our view is totally inconsistent with the function of a probation department. It is elementary that a county probation department is an arm of the superior court [citation] and that one of its main purposes is to assist the court in arriving at a just decision in denying or granting an application for probation [citations]. It is also fundamental that the probation decision should not turn solely upon the nature of the offense committed, but '. . . should be rooted in the facts and circumstances of each case.' (ABA Project on Standards for Crim. Justice, Stds. Relating to Probation (Approved Draft 1970) std. 1.3(a): quoted in *People* v. *Edwards, supra*, 18 Cal.3d 796, 801, fn. 6 [135 Cal.Rptr. 411, 557 P.2d 995].) Consequently, in preparing presentencing reports, probation officers should evaluate each case on its own merits, unfettered by fixed and inflexible policies adopted to conform with the ideas of prosecuting authorities. (See generally ABA Project on Standards for Crim. Justice, Stds. Relating to Probation (Approved Draft 1970) stds. 1.3, 2.2, 2.3.) It seems clear to us that the degree of objectivity so essential to minimum requirements of due process was lacking in this case." (*Id.*, at p. 945.)

Server's reliance upon *Villarreal* is misplaced. The instant record does not substantiate the allegation the probation officer altered the recommendation because of a statement of general policy. Indeed, the probation officer's recommendations, as well as the trial judge's later independent, oral statement of reasons for his consecutive sentencing, was firmly "rooted in the facts and circumstances" of the case. Server concedes: "There is nothing wrong with a probation officer consulting with either the prosecution or defense counsel about an appropriate recommendation, . . ." He challenges, however, the alteration of "a previous recommendation because of policy comments by a prosecutor not assigned to the case." Unlike *Villarreal*, the record here does not support the latter allegation. Although we are cognizant of the potential inference of impropriety associated with ex parte communications between the prosecution and probation offices, we cannot imply the loss of the probation office's objectivity within this "open" record. There exists no reason why the probation department represented by different officers cannot independently review a matter and alter its original recommendation. Here, it did so, in an open manner by expressly advising the court of its change in recommendation in the supplemental report, dictated by the "callousness" of the commission of the crimes and Server's "acknowledgement . . . the crime was mostly his idea."

The probation officer's express reference to the conversation with the deputy district attorney was merely additional material in support of her recommendation and not indicative of any loss of her objectivity in appraising the case.

■ Moreover, the recommendation within the probation report is advisory only, provided in order to assist the sentencing court in determining an appropriate disposition after conviction, and may be rejected in toto. (*People* v. *Warner* (1978) 20 Cal.3d 678, 683 [143 Cal.Rptr. 885, 574 P.2d 1237].) Consequently, "[i]n the final analysis [the sentencing] determination is a matter of judgment for the court, not the probation officer." (*Ibid.*) ■ Here, the sentencing judge, although not the judge who presided over the MDSO commitment, was also the trial judge. He was thus fully apprised of the facts of the case and had read and considered the original probation report, the two supplemental reports, the People's statement in aggravation and defense counsel's statement in mitigation. His decision to sentence consecutively was amply rationalized and supported by the record. In fact, Server does not challenge either the sufficiency or the propriety of the trial court's expressed reasons in support of its decision. Accordingly, we can find no error.

## II

■ Server next urges he is entitled to the trial court's 1977 determination of seven years as the maximum term of confinement. We disagree.

Welfare and Institutions Code section 6316.1 provides in pertinent part: "(a) In the case of any person found to be a mentally disordered sex offender who committed a felony on or after July 1, 1977, the court shall state in the commitment order the maximum term of commitment, and the person may not be kept in actual custody longer than the maximum term of commitment, except as provided in Section 6316.2. For the purposes of this section, 'maximum term of commitment' shall mean the longest term of imprisonment which could have been imposed for the offense or offenses of which the defendant was convicted, including the upper term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed less any applicable credits as defined by Section 2900.5 of the Penal Code and disregarding any credits which could have been earned

under Sections 2930 to 2932, inclusive, of the Penal Code." Consequently, the trial court erred in declaring seven years to be the "maximum term of commitment" rather than nine years, consisting of the upper term for the rape (seven years) aggregated by the consecutive sentences for forcible oral copulation (sixteen months) and attempted sodomy (eight months).

■ Under Welfare and Institutions Code section 6316.1, the trial court's designation of the maximum possible term of commitment is ministerial in nature, although informative to defendant. Similar to a juvenile court judge's determination of a minor's maximum term of commitment for treatment and rehabilitation under Welfare and Institutions Code section 726 for a single specific offense, a trial court does not exercise any discretion in performing this task under Welfare and Institutions Code section 6316.1. (Cf. *In re Eugene R.* (1980) 107 Cal. App.3d 605, 618 [166 Cal.Rptr. 219]; *In re James A.* (1980) 101 Cal. App.3d 332, 339 [161 Cal.Rptr. 588].) ■ Consequently, again by analogy, the trial court's incorrect determination of seven years in essence, but not in fact, constituted an unauthorized "sentence" subject to judicial correction whenever the error comes to the attention of the trial or reviewing court regardless of the potentiality of the imposition of a greater term. (*People v. Serrato* (1973) 9 Cal.3d 753, 763-765 [109 Cal.Rptr. 65, 512 P.2d 289]; *In re Sandel* (1966) 64 Cal.2d 412, 418 [50 Cal.Rptr. 462, 412 P.2d 806]; *People v. Cabral* (1975) 51 Cal. App.3d 707, 717-718 [124 Cal.Rptr. 418]; *People v. Massengale* (1970) 10 Cal.App.3d 689, 693 [89 Cal.Rptr. 237].) Thus, had Server remained in treatment as an MDSO, the court could have corrected the declaration of the possible maximum term of confinement.

A fortiori, if the "unauthorized" term is not binding upon the court if Server remained an MDSO, then it cannot be binding upon the sentencing court when a defendant has been returned from treatment and criminal proceedings reinstituted under Welfare and Institutions Code section 6325. Moreover, the ministerial declaration under Welfare and Institutions Code section 6316.1, being devoid of the exercise of any discretion, does not constitute a sentencing; thus, absent any prejudice to defendant it cannot later be binding upon the sentencing court. Here, the record is devoid of prejudice to Server warranting remand for resentencing beyond his expectation his term would be two years shorter, a consideration of apparently little weight. (See generally, *In re Sandel, supra,* 64 Cal.2d 412.) Finally, he received credit for the time he served at Patton State Hospital. (Welf. & Inst. Code, § 6325.)

*Disposition*

The parties agree the abstract of judgment erroneously reflects attempted sodomy as a felony listed in section 667.5, subdivision (c). Accordingly, the superior court is directed to prepare a new abstract of judgment correcting this error. In all other respects, the judgment is affirmed.

Staniforth, Acting P. J., and Work, J., concurred.