[Crim. No. 22122. Dec. 10, 1982.]

In re THOMAS HERCULES PIPINOS on Habeas Corpus.

**COUNSEL**

Nicholas De Pento for Petitioner.

Quin Denvir, State Public Defender, and Marjorie C. Swartz, Deputy State Public Defender, as Amici Curiae on behalf of Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen, Harley D. Mayfield and Jay M. Bloom, Deputy Attorneys General, for Respondent.

**OPINION**

**REYNOSO, J.**—In *In re Podesto* (1976) 15 Cal.3d 921, 938 [127 Cal.Rptr. 97, 544 P.2d 1297], we held, pursuant to our supervisory authority over state criminal procedure, that trial courts should render a statement articulating their reasons for denying an application for release pending appeal.[1] In this pro-

---

[1]As in *Podesto*, this opinion will utilize the terms "release pending appeal" and "bail pending appeal" interchangeably. "We believe that the 'release pending appeal' terminology is generally preferable to the more common 'bail pending appeal' nomenclature, because the former term clearly indicates that money bail is only one condition, among others, that courts may utilize in the exercise of judicial discretion to assure a defendant's presence at all necessary proceedings. [Citations.]" (*In re Podesto, supra,* 15 Cal.3d 921, 925-926, fn. 1.)

ceeding for writ of habeas corpus we are called upon to provide guidance as to what constitutes an adequate statement of reasons for denying release pending appeal. Particularly, we must determine whether the reasons stated by the trial court in denying petitioner's request for bail on appeal provide sufficient specificity to permit meaningful appellate review.

Petitioner was convicted of conspiracy and possession of controlled substances for sale and was sentenced to state prison. The trial court denied his motion for release on bail pending appeal on the basis that he posed a "substantial flight risk," represented "some risk to society," and that the court did not "perceive a substantial likelihood of success on appeal." Petitioner, relying on *Podesto* and federal decisional authority, contends (1) the trial court failed to adequately articulate its reasons for denying bail on appeal, and (2) the denial of bail constituted an abuse of discretion.

As we shall explain, we find petitioner's first contention sound and conclude that the trial court's statement is inadequate to allow us to review its evaluative process in weighing the factors by which we must judge the validity of the denial. In accordance with the reasoning underlying our decision in *Podesto,* we hold that a trial court's statement of reasons should contain more than mere findings of ultimate fact or a recitation of the relevant criteria for release on bail; the statement should clearly articulate the basis for the court's utilization of such criteria.

With respect to petitioner's claim of abuse of discretion, we conclude that the court's statement of reasons is in itself insufficient to review the claim, even if complemented by the court's comments at the sentencing hearing. Because of the inadequacy of the court's statement, we cannot determine whether the court properly exercised its discretion in light of all the attending circumstances. Accordingly, the writ should be denied. We conclude, however, that in light of the trial court's noncompliance with the mandate of *Podesto,* petitioner is entitled to an immediate hearing on his present application for bail on appeal.

I

Petitioner Thomas H. Pipinos (hereafter defendant) was convicted by a jury of five offenses dealing with controlled substances: one count of conspiracy to transport or furnish controlled substances (Pen. Code, § 182; Health & Saf. Code, § 11379), and four counts of possession of controlled substances for sale (Health & Saf. Code, § 11378). After the verdict was entered, the trial court ordered defendant to appear at a later date for a sentencing hearing; the court further ordered that defendant be released on bail of $60,000 pending sentencing. Defendant had made all required appearances during the year trial proceedings were pending.

On June 19, 1980, defendant appeared at the sentencing hearing as required by the trial court, and he was sentenced to a four-year prison term. That same day, defendant moved for an order releasing him on bail pending appeal. The prosecutor,[2] urging that bail be denied, conceded that defendant had ties to the community—"a house, a family and a business"—but nonetheless argued that defendant was a flight risk in view of the impending prison term; that defendant's conviction of drug offenses indicated that he posed a "very significant danger to society"; and, finally, that defendant's appeal was frivolous since pretrial petitions for writ of mandate raising the same issues had been denied. Defense counsel sought to rebut each of these assertions by noting that defendant had appeared at all prior proceedings, that defendant's conduct since his arrest had been exemplary, and that the proposed grounds of his appeal from conviction have legitimate merit.[3] Defense counsel also made a lengthy argument attaching significance to the fact that defendant had not fled during a recess when, immediately prior to argument on the motion, the judge and bailiff had temporarily left the courtroom.

At the time of defendant's motion for bail on appeal, the trial court had before it three reports which had been offered in evidence at the immediately preceding sentencing hearing. The reports were prepared by the probation officer and two doctors who had been engaged to make a sentencing recommendation. All recommended no state prison custodial time. All three reports characterize defendant as a family man and aggressive businessman who became involved in the sale of methamphetamines through poor judgment, greed and the bad influence of business associates in the bar supply distribution business.

The probation officer's report indicates that defendant was a self-employed salesman, age 38, who had lived in San Diego County for 15 years. He has been married since 1970 and is the sole support of his wife and two children. At the time of his arrest he had been earning $50,000 per year as a master distributor for a bar supply dealership. The offenses of which defendant was convicted occurred when he sold methamphetamines to an undercover informant. The report acknowledged the seriousness of the offenses and concluded that defendant was motivated primarily by monetary considerations; never-

[2]This case was prosecuted by a trial attorney from the Attorney General's Special Prosecutions Unit. Defendant's prosecution was the culmination of an undercover operation conducted by the Organized Crime and Criminal Intelligence Division of the state Department of Justice.

[3]Defendant's petition indicates that he intends to raise on appeal "constitutional search and seizure issues, as well as issues involving defendant's being denied his right to fully cross-examine a witness on factors relating to his entrapment defense." The appeal is presently pending in the Court of Appeal.

theless, the probation officer pointed out that defendant had no prior criminal record and, accordingly, recommended a formal probation of five years with a maximum term of local confinement.

Dr. Thomas Rodgers, a psychiatrist, submitted to the court an evaluation letter which concluded that defendant is free from any mental disorganization or disorder, that he is not psychotic, that he is not violent, that he has no history of drug abuse, and that, in his professional opinion, he presents no threat to the community upon his release. Accordingly, Rodgers recommended monitored probation. Dr. G. Thomas Gitchoff, a criminologist, described defendant as a highly motivated, energetic man who had successfully developed a business which, prior to his arrest, grossed about $3 million a year. He too expressed the opinion that defendant would pose no threat to the community upon release. Concluding that a prison term would result in long-term damage to defendant's family and business, Gitchoff designed a suggested rehabilitative program involving five years' probation with conditions including payment of a fine and donations to charity.

The court rejected these recommendations when, as noted above, it sentenced defendant to prison for four years. The court also apparently gave little weight to the reports' conclusions that defendant posed no danger to the community and that he had strong community ties, as it denied the request for bail pending appeal.

A review of the reporter's transcript reveals that the court, in denying defendant's motion, did purport to articulate its basis for denying bail. First, the court opined that defendant was a potential flight risk. The court noted: "We're in a different ballgame now. He's been sentenced to prison for a substantial period of time . . . and I'm persuaded that he wouldn't give much pause to flee." Secondly, the court accepted the prosecutor's argument that defendant posed "some risk to society" because of his involvement in a drug distribution operation. With respect to defendant's potential risk to society the court explained: "I'm not persuaded that there's going to be this sudden metamorphosis . . . [¶] I think that what we're dealing with here are the results of some basic character flaws in Mr. Pipinos, and I am not persuaded there's going to be any change in that regard." Finally, the court concluded that while it was "not really in a position to comment on some of the pretrial motions," it nevertheless did not perceive "a substantial likelihood of success on appeal." (The trial court's comments are set out verbatim in the margin.)[4]

---

[4]We reproduce below the court's entire statement of reasons for denying defendant's motion for bail on appeal:

"I do find, and I am persuaded that there is some substantial flight risk at this point in time.

"We're in a different ballgame now. He knows he's been sentenced to prison for a substantial period of time and I think he, in good faith, and probably with some reason, perhaps, was hopeful that was not going to be the judgment of the court, and maybe anticipated up to this point

Defendant filed a notice of appeal and a request for a transcript of the hearing. Thereafter, he petitioned the Court of Appeal for a writ of habeas corpus to compel the setting of bail on appeal. The appellate court summarily denied the writ. Upon defendant's petition for hearing in this court, we ordered the Director of Corrections to show cause before the Court of Appeal why the relief prayed for should not be granted. Following hearing on the matter, the Court of Appeal by opinion again denied the writ. We then granted defendant's subsequent (and second) petition for hearing in order to reaffirm and elaborate on our holding in *Podesto,* and, particularly, to explore the question of what constitutes an adequate statement of reasons for denying release pending appeal.

## II

Defendant concedes, as he must, that there is no absolute right to bail on appeal (*In re Podesto, supra,* 15 Cal.3d 921, 929-933) since release after a felony conviction is totally within the trial court's discretion (Pen. Code, § 1272).[5] His principal contention is that the trial court failed to provide an adequate statement of reasons for denying bail pending appeal. We agree.

"California courts have long acknowledged that a primary purpose of bail after conviction is to assure that defendant will not flee the jurisdiction." (*In re*

---

in time that that wouldn't be the judgment, but that question has been resolved now, and he knows exactly what the judgment of the court is, and I think that makes—changes the situation substantially, and I'm persuaded that he wouldn't give much pause to flee, because I'm sure he's not at all happy about the prospect of spending some time in prison, even though he'll be, if not literally, at least to some extent, in the company of Big Frank, his mentor, the one he admires so much.

"Secondly, I do think that he does represent some risk to society. What I meant by that in my pronouncement of judgment, not quite the same risk a rapist or murderer does, but he represents some risk, and I'm not persuaded that there's going to be this sudden metamorphosis that he seems to suggest that there might be, that his conviction and now his sentence to prison is going to have that major effect, going to bring about that substantial a change in his character.

"I think what we're dealing with here are the results of some basic character flaws in Mr. Pipinos, and I am not persuaded that there's going to be any change in that regard.

"As far as the trial proceedings, I don't perceive a substantial likelihood of success of appeal. I'm in a bit of a disadvantage and not really in a position to comment on the rulings on some of the pretrial motions, but at least the part of the case that I have been directly involved in, I don't see a substantial likelihood of success on appeal.

"So I think all three would be the criteria, factors that I have to consider, mentioned in Podesto, and I have considered, and I'm satisfied that they dictate the denial of bail on appeal.

"So, the application for the setting of bail will be denied. He will be remanded to the custody of the sheriff."

[5]Section 1272 draws a distinction between convicted misdemeanants sentenced to a term of imprisonment and convicted felons so sentenced. The former class is entitled to bail "[a]s a matter of right" (subd. 2); however, the latter class of convicted felons "may be admitted to bail . . . [a]s a matter of discretion" (subd. 3). In *Podesto,* we upheld this statutory scheme against state constitutional and federal equal protection challenges. (15 Cal.3d at pp. 929-933; cf. *In re Underwood* (1973) 9 Cal.3d 345 [107 Cal.Rptr. 401, 508 P.2d 721] [absolute right to *preconviction* bail in noncapital cases].)

*Podesto, supra,* at p. 930.) It is settled that release of a convicted felon during the appeal process is a matter left to the sound legal discretion of the trial court seeking some "practical assurance that defendant will attend upon the court when his presence is required." (*In re Brumback* (1956) 46 Cal.2d 810, 813 [299 P.2d 217].) We recognized in *Podesto,* however, that the court does not have unbridled discretion in this area (15 Cal.3d at p. 933; see also *Ex Parte Hoge* (1874) 48 Cal. 3, 5); and, accordingly, we set out guidelines to assist courts in making reasoned determinations regarding postconviction bail applications by felons. We held that in exercising discretion under section 1272 the superior court "may consider (1) the likelihood of the defendant's flight, (2) the potential danger to society posed by the defendant's release, and (3) the frivolousness or lack of diligence in defendant's prosecution of his appeal; . . . " (*In re Podesto, supra,* at p. 933.)[6]

Recognizing that appellate review of bail decisions had been largely frustrated because trial courts were not required to articulate their reasons for denying an application, we further held in *Podesto* that trial courts "should render a brief statement of reasons in support of an order denying bail on appeal. [Citations.] Such a statement need not include conventional findings of fact; all that is required 'is that the basis for the order be set forth "with sufficient specificity to permit meaningful review." ' [Citations.]" (15 Cal.3d at p. 938; quoting *People* v. *Browning* (1975) 45 Cal.App.3d 125, 137-138 [119 Cal.Rptr. 420];[7] *Kent* v. *United States* (1966) 383 U.S. 541, 561 [16 L.Ed.2d

---

[6]Federal courts weigh these same considerations in determining whether to grant a convicted felon release pending appeal.

While there is no automatic right to bail after conviction (*Bowman* v. *United States* (1964) 13 L.Ed.2d 171 [85 S.Ct. 232]), "[t]he command of the Eighth Amendment that 'Excessive bail shall not be required . . . ' *at the very least* obligates judges passing upon the right to bail to deny such relief only for the strongest of reasons." (*Sellers* v. *United States* (1968) (Black, J., in chambers) 21 L.Ed.2d 64, 66 [89 S.Ct. 36, 38]; italics in original. Accord: *Harris* v. *United States* (1971) (Douglas, J., in chambers) 404 U.S. 1232 [30 L.Ed.2d 25, 92 S.Ct. 10]; *Truong Dinh Hung* v. *United States* (1978) (Brennan, J., in chambers) 439 U.S. 1326, 1329 [58 L.Ed.2d 33, 36, 99 S.Ct. 16].)

The Bail Reform Act of 1966 (18 U.S.C. § 3146 et seq.) further limits the discretion of federal judges to deny bail on appeal; it provides that a convicted felon is entitled to bail "unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community . . . or if it appears that an appeal is frivolous or taken for delay, . . . ." (18 U.S.C. § 3148; see also Fed. Rules App. Proc. rule 9(c), 28 U.S.C.)

[7]In *People* v. *Browning, supra,* the Court of Appeal held that the juvenile court provided an adequate statement of reasons for declaring defendant unfit to be treated as a juvenile. Like *Podesto,* the *Browning* court specifically disclaimed a requirement that the lower court should "necessarily include conventional findings of fact." (45 Cal.App.3d at p. 138; quoting *Kent* v. *United States, supra,* 383 U.S. 541, 561.) *Browning* emphasized, however, that although the superior court had not made conventional findings of fact, it expressly recited that it had read defendant's entire file—including every probation report and clinical study—and then, after considering all the relevant evidence before it, the court set forth the factual basis for its conclusion with sufficient specificity to permit meaningful review. As we discuss, *infra,* the trial court here, by contrast, did not set forth its reasons for differing with the conclusions contained in the reports submitted on behalf of defendant.

84, 97, 86 S.Ct. 1045].[8]) We stressed in *Podesto* that the requirement of a statement of reasons—in addition to facilitating appellate review—advances two other independent policies. The requirement of articulated reasons serves the dual purpose of acting as "an inherent guard against the careless decision" and of "preserving public confidence in the decision-making process." (15 Cal.3d at p. 937; citing *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12].) Thus, *Podesto*'s requirement of a statement of reasons seeks to ensure that the trial judge weighs the relevant considerations and that he or she recognizes and articulates the grounds for denial of bail so as not to deprive defendant of meaningful appellate review of the decision.[9] The question of what constitutes an adequate statement of reasons must therefore be resolved by determining whether the statement furthers these desirable ends.

■ Applying these principles to the instant case, we examine whether the trial court's comments serve to further the purposes of *Podesto*'s requirement of a statement of reasons. As will appear, our review of the court's statement (as set forth fully at fn. 4, *ante*) reveals that, to the contrary, the court's ruling in this case does not promote *Podesto*'s goal of ensuring that judges engage in careful and reasoned decisionmaking. Once defendant came forward with evidence in support of his application for release—by way of the three reports, including the independent report by the probation officer—the court was duty-bound to articulate its evaluative process and show how it weighed the evidence presented in light of the applicable standards. (*In re Podesto, supra,* at p. 938.) We find the court's statement inadequate as it does not identify the specific facts which persuaded the court that bail would be inappropriate in this case. The court simply based its denial of bail on the bare conclusions that there was a likelihood that defendant would flee and would continue his criminal activities

---

[8]In *Kent* v. *United States, supra,* the Supreme Court interpreted a District of Columbia statute requiring a "full investigation" before waiving a minor to adult court and held that due process requires, as a precondition to a critical dispositional decision, that there be meaningful appellate review of the court's discharge of its statutory duty. While not requiring "conventional findings of fact," *Kent* requires a statement of reasons sufficient to demonstrate full investigation and careful consideration of the matter. (383 U.S. at p. 561 [16 L.Ed.2d at p. 97].) Because *Kent* is founded on procedural due process principles (*id.,* at p. 562 [16 L.Ed.2d at p. 98]), it seems clear that a judge's reasoning must be adequately delineated both out of fundamental fairness to the defendant and as an aid to the appellate court. (See *United States* v. *Weaver* (D.C. Cir. 1968) 405 F.2d 353, 354.)

[9]A statement is also required in some other contexts where circumstances make it fundamentally unfair to defendants to fail to articulate reasons. We have required a statement of reasons for denial of an application for parole release (see *In re Sturm* (1974) 11 Cal.3d 258 [113 Cal.Rptr. 361, 521 P.2d 97]), and the Court of Appeal has required a juvenile court to articulate its reasons for certifying a minor for prosecution as an adult (see *Juan T.* v. *Superior Court* (1975) 49 Cal.App.3d 207 [122 Cal. Rptr. 405]). But compare our holding in *People* v. *Edwards* (1976) 18 Cal.3d 796, 799 [135 Cal.Rptr. 411, 557 P.2d 995], that a statement of reasons by the sentencing judge for denying probation is neither constitutionally required nor required in the exercise of our supervisory authority over state criminal procedure.

as a dealer of controlled substances, and that his appeal was meritless. We examine each of these conclusions separately.

## Likelihood of Flight

■ Because the primary purpose of bail is assurance of continued attendance at future court proceedings (*In re Brumback, supra,* 46 Cal.2d 810, 813), a defendant to qualify for release on appeal must satisfactorily demonstrate that the likelihood of his flight is minimal in light of the following criteria: "(1) the defendant's ties to the community, including his employment, the duration of his residence, his family attachments and his property holdings; (2) the defendant's record of appearance at past court hearings or of flight to avoid prosecution; and (3) the severity of the sentence defendant faces."[10] (*In re Podesto, supra,* 15 Cal.3d 921, 934-935.)

In the present case, the three reports submitted on behalf of defendant presented a prima facie case for release pending appeal. These reports reveal that defendant has lived in San Diego for approximately 15 years; that he owns his own business which he intends to continue; that he had no criminal history; and that, at the time of sentencing, he was residing with his wife and two children and was earning a legitimate annual income in excess of $50,000. Further, defendant attended all court proceedings and was released on $60,000 bail prior to sentencing.

Yet, the trial court was "persuaded that he wouldn't give much pause to flee" solely on the ground that the defendant faced a four-year prison term. While the criteria enunciated in *Podesto* permit the court to consider the severity of the sentence, this factor cannot be considered in isolation; rather, *Podesto* requires that it be weighed against other factors, including community ties, employment and record of appearances. We cannot agree with Justice Kaus' view that it is sufficient for the trial court to state *only* "that because of the severity of the sentence the defendant was likely to flee." While in this case the sentence may in fact be so severe that it is likely defendant would have elected to leave his family and forego his property, the court's failure to mention the other factors identified in *Podesto* does not permit us to review in what manner, if at all, it balanced defendant's community ties and record of court appearances against the incentive to flight suggested by the prison term. *Podesto* mandates such a balancing; otherwise denial of bail would be proper in any case in which a prison term is imposed, regardless of offsetting factors presented by defendant.

---

[10]These criteria correspond to the factors employed in determining the likelihood of flight in federal cases under the Bail Reform Act of 1966. (18 U.S.C. § 3146(b); see, e.g., *Harris* v. *United States* (1971) 404 U.S. 1232 [30 L.Ed.2d 25, 92 S.Ct. 10]; *Bandy* v. *United States* (1960) 5 L.Ed.2d 218 [81 S.Ct. 197].)

Because there is no evidence of such a balancing in this case, the court's conclusory finding that defendant poses "some substantial flight risk" because of the impending prison term is clearly inadequate to satisfy *Podesto*'s requirement of a statement of reasons. Consequently, defendant is deprived of meaningful review of the decision. Moreover, such an insufficient statement fails to promote the policy purpose underlying our requirement of a statement of reasons—guarding against careless decisionmaking. Although the court may very well have engaged in careful analysis of the facts and law, its failure to articulate its reasons for finding defendant a flight risk leaves us without the benefit of its analysis.

*Danger to Community*

■ The court's finding that defendant is a "danger to society" is also deficient with respect to providing a basis for meaningful review and guarding against careless decisionmaking. We held in *Podesto* that one factor a court may properly consider in deciding whether to release a convicted felon on bail "is whether there is any danger that, if released, [the defendant] would continue to commit crime." (15 Cal.3d 935; quoting *In re Scaggs* (1956) 47 Cal.2d 416, 419 [303 P.2d 1009]; but see *In re Underwood, supra,* 9 Cal.3d 345, 347.) The court in the instant case, however, does not expressly state that there is a probability that defendant will continue to engage in criminal conduct. Instead, the court obliquely refers to defendant's "basic character flaws" and bases its conclusion of danger to society on the fact that there is no evidence of a "metamorphosis." We may conceivably infer that the court found, based on its assessment of defendant's character, that it was unlikely that defendant would forego his profitable trafficking in controlled substances. However, a primary purpose of the *Podesto* requirement of a statement is precisely to prevent this type of speculative judicial second-guessing, especially when, as here, we are asked to draw inferences as to inferences the trial court might have drawn.

Further, the trial court does not mention whether it even considered the professional evaluations submitted to the court by Drs. Rodgers and Gitchoff, both of whom expressly conclude—contrary to the court's assessment of defendant's character and its prediction of his future behavior—that defendant presents no threat or danger to the community.[11] Certainly, the court was free in the exercise of its discretion to reject these professional evaluations in favor of its own assessment of the present crime and defendant's history. However, the court's conclusory comments regarding defendant's alleged dangerous propensities do not reveal on what ground the court rejected the reports' contrary conclusion.

---

[11]The probation report's recommendation of one year in county jail also seems to negate a finding of danger to the community.

Because of the court's failure to articulate its reasons for finding defendant a danger to the community, we cannot ascertain the manner in which the court exercised its discretion. We do not know if the denial of bail was based upon the circumstances and propensities of the individual defendant, or whether it was based upon precisely the generalizations of future criminality *Podesto*'s standards were meant to prevent. *Podesto* urges caution in denying bail based on the alleged propensities of the defendant and warns courts "not [to] adopt an ironclad, mechanical policy of denying bail to all who commit a particular crime." (15 Cal.3d at p. 936, fn. 10; citing *In re William M.* (1970) 3 Cal.3d 16 [89 Cal.Rptr. 33, 473 P.2d 737]; *In re Minnis* (1972) 7 Cal.3d 639 [102 Cal.Rptr. 749, 498 P.2d 997].) The court's statement in this case does not indicate what factors the court considered in predicting defendant's future criminal activity. *Podesto*'s intent is not fulfilled by such a statement. To hold otherwise would allow courts to deny bail to every defendant convicted of drug offenses solely on the basis of the inherent danger of this criminal activity. A court's statement of reasons should clearly indicate to the reviewing court that a defendant's interest in freedom pending appeal has been abrogated only after careful scrutiny of his or her individual circumstances and propensities.

*Merit of the Underlying Appeal*

As a final ground for denying bail on appeal, the trial court ruled that it did not perceive a "substantial likelihood of success" on appeal. Defendant correctly argues that the court applied an incorrect standard and improperly placed the burden. *Podesto* holds that the court may decline to grant bail "if it determines either that the appeal is *wholly* frivolous or that the defendant is not diligently prosecuting his appeal." (15 Cal.3d at p. 936; italics added.) The court, however, "should not require as a prerequisite to release that the appeal actually appear meritorious [citation]; instead, denial of release on these grounds is only justifiable if 'the appeal is so baseless as to deserve to be condemned as frivolous or is sought as a device for mere delay.' (*Ward* v. *United States* (1956) 1 L.Ed.2d 25, 27 [76 S.Ct. 1063, 1065].)" (*Ibid.*)

It will be recalled that the prosecutor below urged the court to find the appeal frivolous because the search and seizure issues which defendant proposed to raise were briefed in pretrial writs denied by this court and the Court of Appeal.[12] However, neither court addressed the merits of the issues. As we noted in *People* v. *Medina* (1972) 6 Cal.3d 484, 493 [99 Cal.Rptr. 630, 492 P.2d 686], an "appellate court's denial without opinion of defendant's petition for a pretrial writ cannot properly be deemed a conclusive decision on the merits, and . . . defendant is entitled to an appellate court's determination of his

---

[12]By contrast, the Attorney General in *Podesto* conceded that denial of a pretrial petition for writ of mandamus does not constitute, an appropriate basis for the denial of bail. (15 Cal.3d at p. 938, fn. 12.)

search and seizure contention . . . ." In this case defendant's pretrial petition for writ of mandamus was denied for being untimely and for failure to provide an adequate record.[13]

 In sum, the court's statement is inadequate to allow us to review its evaluative process in weighing the factors to be considered in the setting of bail. The court's comments that defendant is a potential danger to the community and that he is likely to "skip" bail are the conclusionary equivalent of ultimate findings of fact. "[W]ithout an adequate statement of reasons we cannot follow 'the analytic route the [court] traveled from evidence to action' [citation], or whether it 'randomly leap[ed] from evidence to conclusions.' [Citation.]" (*Juan T.* v. *Superior Court, supra,* 49 Cal.App.3d 207, 209, fn. 2; quoting *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 515-516.) We are presented with such an inadequate statement in this case; consequently, it is only with great difficulty, if at all, that we as a review court can ascertain the manner in which the trial court exercised its discretion. A statement like the one here does not promote the primary purpose of *Podesto*'s requirement of a statement of reasons—the facilitation of meaningful review.

The trial court's comments in this case amount to nothing more than a recitation of the standards set forth in *Podesto*. Thus, the trial court's statement indicates only that it recognized the criteria to be considered—likelihood of flight, potential danger to society and frivolousness of the appeal—though it did mischaracterize the last factor. To accept as adequate a statement that shows no more than judicial conversance with the applicable standards would render our *Podesto* mandate a formalistic gesture. Because a court has considerable discretion in bail matters, it is imperative that the record reflect the factors that influenced its decision.[14] It is insufficient for a trial court to merely state conclusions of ultimate fact which, at best, indicate a check-list approach to the standards set forth in *Podesto*. Accordingly, we hold that a trial court's statement should clearly delineate the basis for its utilization of the applicable standards. Such a statement affords defendants the opportunity to meaningfully challenge arbitrary decisions and allows appellate courts to engage in meaningful review upon being apprised of the analytical process by which the trial court arrived at its conclusions. It is this analytical process, and not mere conclusory com-

---

[13]The Court of Appeal's minute order of October 15,1980, reads: "Pipinos v. Superior Court of San Diego County, etc. [4 Civ. 24112] Petition for writ of mandate and stay of proceedings filed October 14, 1980, is one day late under Penal Code section 1538.5, subdivision (i), and also furnishes an insufficient record (Lemelle v. Superior Court, 77 C.A.3d 148, 156; Thompson v. Superior Court, 262 C.A.2d 98, 106). It is denied."

[14]We emphasize that neither *Podesto* nor our decision in this case seeks to limit the discretion of the trial court in passing on bail applications. We only require that reasons for the denial be articulated—a requirement based on the simple principle that a proper denial is one which can be reasonably explained.

ments, which is most useful in reviewing to determine whether the trial court properly exercised its discretion. We thus reaffirm *Podesto*'s mandate imposing on trial courts the duty to articulate the basis for denial of release on appeal with sufficient specificity to afford meaningful appellate review.[15]

## III

■ Our conclusion that the trial court failed in its duty to provide an adequate statement of reasons does not mean, of course, that defendant automatically prevails in his contention that the court abused its discretion in denying bail. Failure to state reasons does not in itself justify the conclusion that the court's denial constitutes a manifest abuse of discretion. We must still review the record to determine if the court's denial is supported by the totality of facts before it, notwithstanding its failure to identify the specific facts which caused it to deny bail.

Although we have examined the three reports submitted to the court—which we concede are favorable to defendant—we cannot conclude that he has made a showing sufficient to entitle him to bail as a matter of law. We are reluctant to find that the trial court abused its discretion where that court presided over the trial, was able to observe defendant's demeanor, and was generally in a better position to assess his showing. Under these circumstances—and given the limited record before us—it is not our province to substitute our judgment for that of the trial judge.

Must we therefore uphold the trial court's denial of bail even though the three favorable reports have left us with the lingering doubt that the court *may* have abused its discretion? As will appear, the answer is, "No."

The present case illustrates the problems an appellate court must confront when presented with an inadequate *Podesto* statement. As noted above, a

---

[15]We note that federal decisions have consistently rejected statements of reasons which seek to justify denial of bail solely in conclusory form. In *United States* v. *Thompson* (D.C. Cir. 1971) 452 F.2d 1333 (cert. den. 405 U.S. 998 [31 L.Ed.2d 467, 92 S.Ct. 1251]), the court, per Skelly Wright, J., remanded for further proceedings in a case where the district judge's order denying bail did "no more than repeat the statutory standard . . . and state that defendant [had] failed to meet it." (At p. 1336, fn. 7.) The *Thompson* court states that "mere parrotting of the provisions of the applicable statute is not an adequate substitute for a full statement of reasons." (*Ibid.*; citing *Weaver, supra,* 405 F.2d at p. 353.) In *Weaver,* the court remanded to permit the entering of a new statement of reasons. The court instructed that "[t]he District Judge should indicate not only which one or more of [the statutory] reasons has prompted him to deny release, but should also delineate the basis for his utilization of such reason or reasons. . . . Only when these reasons are spelled out can an appellant intelligently renew his motion before this court; and only then can this court fairly review the merits." (*Weaver, supra,* at p. 354; see also *United States* v. *Williams* (7th Cir. 1958) 253 F.2d 144; *Rhodes* v. *United States* (4th Cir. 1960) 275 F.2d 78; *Jones* v. *United States* (D.C. Cir. 1966) 358 F.2d 543; *United States* v. *Seegers* (D.C. Cir. 1970) 433 F.2d 493.)

primary purpose of the requirement of a statement of reasons is to provide a basis for meaningful appellate review in bail cases which, as a practical matter, arrive in the appellate court by collateral proceeding and often without a complete record of facts and proceedings. (See *People* v. *Edwards, supra,* 18 Cal.3d 796, 803.) We are presented with just such an incomplete record in this case. Nonetheless, the Attorney General argues that if we review the trial court's comments at sentencing, we must uphold the denial of bail. We examine this contention.

At the time the Court of Appeal denied defendant's habeas corpus petition, it had before it a partial transcript relating only to the hearing on the motion for bail. However, because of the duration of the instant proceeding in the appellate courts, a complete transcript of all proceedings of June 19, 1980, including the sentencing hearing, is now available. Pursuant to the request of the Attorney General, we have taken judicial notice of the transcript of the sentencing hearing.[16] (Evid. Code, § 452, subd. (d); see *People* v. *Maxwell* (1978) 78 Cal.App.3d 124, 130-131 [144 Cal.Rptr. 95].) We agree with the Attorney General that because the sentencing hearing immediately preceded the hearing on the motion for bail, the transcript of the earlier hearing may show the context in which the court made its comments at the latter hearing. We conclude, however, after careful review of the sentencing transcript, that the court's comments therein in no way further explicate the basis for its denial of bail.

■ We note at the outset that the court did not discuss matters relating to likelihood of flight or merit of the underlying appeal since these factors are not relevant in a sentencing context. The court did, however, express its disagreement with the probation report's and professional evaluations' recommendation of probation. In this regard, the court expressed the opinion that defendant is a thief, perjurer and drug dealer who, though technically without a prior record, has been engaged in illegal conduct for some time. It is in this context that the court states that defendant's ongoing involvement in the distribution of illegal drugs shows that he is a threat to the community. This statement thus serves to justify the court's conclusion that defendant's *past* offenses warrant more severe punishment than probation; it does not, however, purport to predict

---

[16]Defendant opposes the request arguing that the Attorney General has been dilatory in seeking to have the transcript made part of the record, and that the court's comments at sentencing are irrelevant. In spite of defendant's first argument, we conclude that—in fairness to the trial court—we should consider its comments at the sentencing hearing since defendant himself relies on evidence submitted at sentencing in support of his contention that he made a prima facie case for bail. Defendant's second argument is only superficially appealing. That the *Podesto* statement should stand alone is conceded, but only as it is relevant to the issue whether the statement adequately sets forth the trial judge's reasoning. However, once an appellate court is presented with an inadequate *Podesto* statement, as in the present case, it must of necessity search the record to determine if the totality of the evidence before the trial court supports its denial of bail. We therefore take judicial notice of the sentencing transcript in order to address defendant's abuse of discretion contention.

defendant's *future* behavior so as to justify incarceration on appeal.[17] The statement is in any event conclusory and as such cannot provide an adequate basis for denying bail. (See discussion, *ante,* at section II.)

In sum, the court's comments in denying bail—even when complemented by its comments at sentencing—do not provide sufficient specificity to enable us to meaningfully review defendant's abuse of discretion contention. This case thus illustrates the soundness of *Podesto's* requirement of a readily available statement of reasons articulating the court's grounds for denial of bail. It is incumbent upon the trial court to provide such a statement so that an appellate court will not have to review the entire record, as we have done, in search of a basis to justify the court's denial of bail.

Without an adequate statement of reasons, we simply cannot ascertain if the court exercised its discretion "in the light of all the attending circumstances." (*In re Brumback, supra,* 46 Cal.2d 810, 813.) Even after reviewing the limited record available to us, we are unable to determine with certainty whether or not the court abused its discretion.

## IV

We have concluded that the court's statement of reasons consists of mere conclusions which do no more than recite that defendant has failed to meet the *Podesto* standards for release pending appeal. We hold that, to comply with *Podesto,* a statement of reasons must clearly articulate the court's evaluative process in applying the relevant criteria to the particular facts of defendant's case. On the limited record before us, however, we cannot hold that the totality of the evidence before the trial court does not support its denial of bail; "we merely say that without an adequate statement of reasons we cannot follow 'the analytic route. . . '" taken by the trial court. (*Juan T.* v. *Superior Court, supra,* 49 Cal.App.3d at p. 209, fn. 2.)

Accordingly, we decline defendant's invitation to set bail or order that reasonable bail be set. In *Podesto* we denied the writ without prejudice to defendant's right to file a new application for bail on appeal with the superior court. (15 Cal.3d at p. 938.) Defendant in this case has been incarcerated for many months without having been properly apprised of the reasons for denial of

---

[17]Justice Richardson disagrees with us only on the question whether the sentencing transcript shows factually that defendant has dangerous propensities. While he agrees with the majority that the statement at the bail hearing was insufficient, he is of the view that the court's discourse at sentencing "contain[s] a considered prediction [of] defendant's future acts. . . ." (*Post,* at p. 208.) With all respect, we cannot agree that it was the purpose of the trial court to engage in a predictive inquiry at sentencing. In this regard, *Podesto* urges "that courts should be somewhat cautious" in denying bail on the sole ground of the alleged dangerous propensities of the defendant. (15 Cal.3d at p. 936.)

bail. Requiring him to file a new application can only serve to further penalize him for the trial court's *Podesto* error. In order to provide a more expeditious remedy, the trial court is ordered to promptly conduct a new hearing on his present application. If bail is again denied, the court should prepare a record sufficient to afford meaningful review in accord with the views we have expressed.

The writ of habeas corpus is denied.

Mosk, J., and Newman, J., concurred.

**BIRD, C. J.**, Concurring—█ ██ I agree that the trial court's statement of reasons for denying petitioner's motion for bail pending appeal was insufficient to satisfy the requirements of *In re Podesto* (1976) 15 Cal.3d 921, 938 [127 Cal.Rptr. 97, 544 P.2d 1297]. The majority correctly hold that the trial court failed to articulate the evidentiary basis for its ruling. Here, petitioner has in essence been penalized for the trial court's noncompliance with the mandate of *Podesto.*

██ ██ Generally, an appellate court is unable to review the trial court's exercise of discretion when no explanation of the reasons for denying bail is provided. Whether or not a petitioner should be released on bail is a question which this court is foreclosed from resolving. Our only recourse is to order the trial court to conduct a new bail hearing.

To one whose application for bail on appeal was erroneously denied, such relief is in effect no relief at all. It is well recognized that an application for bail pending appeal "requires . . . speedy determination if relief is to be effective." (See rule 9(b) Fed. Rules App.Proc., 28 U.S.C., Advis. Com. Note.)

The present case graphically illustrates this problem. Petitioner has spent more than 17 months in jail awaiting resolution of his bail application. If he is entitled to bail, the additional hearing necessitated by the trial court's failure to comply with the mandate of *Podesto* will only serve to further delay vindication of his right and further deprive petitioner of his liberty without according him due process of law. In addition, given the many months that have passed since petitioner's judgment of conviction and sentencing, a decision to grant petitioner's bail application after the new hearing takes place will have little significance.

The procedural protections outlined by this court in *Podesto* are useless if there is no adequate remedy for their violation. Only if a trial court complies with *Podesto* will a petitioner be able to obtain effective relief from an erroneous denial of bail pending appeal. Surely, our trial courts should make the

effort to comport with those requirements. Perhaps this case will function as a reminder of that important responsibility.

**RICHARDSON, J.**—Concurring and Dissenting.—I concur with the majority's denial of the petition for habeas corpus. However, because I believe that the trial judge sufficiently expressed at the sentencing and bail hearings the basis for his decision to deny bail on appeal, I respectfully dissent from the majority's conclusion otherwise.

As noted by the majority, the sentencing hearing immediately preceded the hearing on defendant's request for bail. Because the trial court at the bail hearing did not give a sufficient statement of its reasons for denying bail pursuant to *In re Podesto* (1976) 15 Cal.3d 921, 937-938 [127 Cal.Rptr. 97, 544 P.2d 1297], we must review the record of sentencing to determine whether it illuminates the trial court's actions on the bail motion. (*Ante,* pp. 203-204.)

The majority characterizes the trial court's statements during sentencing as expressing "the opinion that defendant is a thief, perjurer and drug dealer who, though technically without a prior record, has been engaged in illegal conduct for some time." (*Ante,* p. 204.) My colleagues interpret this description merely as the court's justification for its conclusion that *past* offenses by defendant warranted greater punishment than probation. They give no effect to the statements as predictive of defendant's future behavior sufficient to support a denial of bail on appeal. It is here that I disagree.

In *Podesto,* after alluding to the difficulty of predicting future behavior, we reaffirmed that "When the pattern of a particular defendant's history indicates that additional criminal conduct will probably ensue if the defendant is released, . . . a court unquestionably retains the authority to deny release on appeal. [Citations.]" (*Id.,* at p. 936.) We stressed that no "mechanical policy" should be adopted, and that the trial court "should look to the circumstances of the particular defendant . . . ." (*Id.,* at p. 936, fn. 10.)

As we have reiterated in the matter of fixing bail on appeal, " 'the primary discretion belongs to the trial judge . . . [and] [w]here the trial judge has passed upon the merits of the application his ruling will not be disturbed unless a manifest abuse of discretion appears [citations] . . . .' " (*In re Podesto, supra,* 15 Cal.3d at p. 937, quoting *In re Brumback* (1956) 46 Cal.2d 810, 813-814 [299 P.2d 217].) No such "manifest abuse of discretion" occurred here. Stressing defendant's potential risk to society the trial court expressly referred to the pronouncement of judgment: "Secondly, I do think that he does represent some risk to sociey. [¶] What I meant by that in my pronouncement of judgment, not quite the same risk a rapist or murderer does; but he represents some risk, and

I'm not persuaded that there's going to be this sudden metamorphosis that he seems to suggest that there might be, that his conviction, and now his sentence to prison is going to have that major effect, going to bring about that substantial a change in his character. [¶] I think that what we're dealing with here are the results of some basic character flaws in Mr. Pipinos, and I am not persuaded that there's going to be any change in his character." The court's general conclusion that defendant poses a risk which would support a denial of bail on appeal thus *must* be considered in the context of its more specific statements during the sentencing proceedings.

During the sentencing proceedings the trial court extensively recited its reasons for finding defendant unsuitable for probation. After detailing several specific factors and its belief that defendant was not a first time offender but one who had avoided previous detection, the court indicated that while defendant did not present a threat of violence, "I certainly think he does represent a threat or danger to the community. [¶] He's engaged in an ongoing scheme for distributing dangerous substances, controlled substances that are—could be the source of great mischief and danger to members of the community, and he's a thief. [¶] He represents danger to society because he has no compunction at all about going around ripping people off." These comments were aimed at both past and present behavior.

Subsequently, the court observed that defendant's "attitude as I perceive it watching him as a witness here, watching him throughout the trial, based on the other information before me, also convinces me that he's not a suitable and likely candidate for probation. He's not credible, he's not reliable." Finally, the court concluded "It's pretty obvious that he surrounds himself with persons who are deeply engaged in criminal activity and criminal conduct. And again, that seems to satisfy not only the monetary and material needs, but even more significantly some emotional and psychiatric needs of his that I'm not persuaded that, at this stage in his life, I'm not very optimistic there's likely to be much change in that regard; . . ." Also notable is the court's reference to the reports by the psychiatrist and criminologist who evaluated defendant and its specific rejection of their conclusions on the ground that the evaluations did not sufficiently take into account defendant's history of criminality or the attributes of his personality which had embroiled him in the crimes with which he was charged and convicted.

The trial court's discourse on defendant's conduct was more than merely a statement as to defendant's *past* criminal conduct. It also contained a considered prediction that defendant's future acts presented a risk because the psychological and other factors which had led defendant to become involved in criminal activities remained, and defendant's attitude as revealed during trial indicated no present movement toward improvement or meaningful change.

The court considered "the pattern of . . . defendant's history" (*In re Podesto, supra,* 15 Cal.3d at p. 936) and concluded that it revealed a present propensity for criminality which might lead to criminal conduct if defendant was released on bail.

As a result, unlike the trial court in *Podesto,* the court here articulated sufficient reasons for finding that defendant posed a substantial risk if released. A reading of the transcripts of the sentencing and bail proceedings in conjunction provides, in my view, ample material on which to permit appellate review, and to identify several valid reasons for the trial court's action. I conclude that no manifest abuse of discretion occurred and would deny the writ on this basis.

**KAUS, J.,** Concurring and Dissenting.—I concur in Justice Richardson's dissent which focuses on the trial court's finding that defendant's release would pose a threat to society. In addition, I believe that the court said all that it needed to say on the issue of "likelihood of flight." For convenience I repeat its statement of reasons with respect to this issue below.[1] Clearly this is more than adequate to permit meaningful review.

What, in truth, the majority demands is not the type of finding on which meaningful review may be based—a finding of ultimate fact—but a recital of the evidentiary bits and pieces on which the finding of ultimate fact is based. That, however, is not what we were talking about in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12]. What we found lacking in that case is precisely what this record contains: a finding of ultimate fact "to bridge the analytic gap between the raw evidence and the ultimate decision or order." (*Ibid.*)

The ultimate decision in this case was, of course: "Bail denied." Had the court said nothing else, it would have erred. I think it probably would also have erred had it merely said: "Bail denied—likelihood of flight." It gave, however, several reasons for its denial, among others a statement that because of the severity of the sentence the defendant was likely to flee. That is a finding of fact which supports the decision. We can meaningfully review it by going through the record and determining whether there is evidence to support the finding—as

---

[1] "I do find and I am persuaded that there is some substantial flight risk at this point in time. [¶] We're in a different ballgame now. He knows he's been sentenced to prison for a substantial period of time and I think he, in good faith, and probably with some reason, perhaps, was hopeful that was not going to be the judgment of the court, and maybe anticipated up to this point in time that that wouldn't be the judgment, but that question has been resolved now, and he knows exactly what the judgment of the court is, and I think that makes—changes the situation substantially, and I'm persuaded that he wouldn't give much pause to flee, because I'm sure he's not at all happy about the prospect of spending some time in prison, even though he'll be, if not literally, at least to some extent, in the company of Big Frank, his mentor, the one he admires so much."

we do in almost every other case where a finding is attacked for insufficiency.[2] Indeed, that is precisely what the majority appears to have done in this case when it declared itself "reluctant to find that the trial court abused its discretion. . . ." (*Ante,* p. 203.)

I would deny the writ.

Broussard, J., concurred.

---

[2]There are special situations where a statute mandates that the trial court go beyond findings of ultimate fact. One which comes to mind is the granting of a new trial for insufficiency of the evidence. (Code Civ. Proc., § 657; *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359 [90 Cal.Rptr. 592, 475 P.2d 464].) The reasons for that requirement, explained at length in *Mercer* v. *Perez* (1968) 68 Cal.2d 104, 112-116 [65 Cal.Rptr. 315, 436 P.2d 315], are, of course, not present here.